J-S03014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF: B.K.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.N.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1212 WDA 2019 |

Appeal from the Decree Entered July 10, 2019
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.A. No. 23 of 2019

| IN RE: ADOPTION OF K.B.E | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.N.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1213 WDA 2019 |

Appeal from the Decree Entered July 10, 2019
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.A. No. 22 of 2019

BEFORE:    McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    FILED MARCH 17, 2020

M.N.E., Mother, appeals from the decree entered terminating her parental rights to B.K.E. and K.B.E. She claims that the evidence was insufficient to support the termination of her parental rights. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

CYS reinitiated contact with Mother in December 2017 after receiving a report concerning Mother's drug use and taking the Children with her to well-known drug houses. CYS had been previously involved with the family in January 2016, because of Mother's drug use and inability to provide adequate supervision for the Children. Mother had not registered K.B.E. for kindergarten, even though he was then six years old, and despite his having been enrolled in kindergarten while living with Father. See N.T. Hearing 6/21/19, at 56. CYS filed a dependency petition on December 22, 2017. Following the dependency conference, the Children remained with Mother.

Less than two weeks after the conference, CYS received a call that the Children were unattended at home. Upon arriving at Maternal Grandmother's home, CYS found the home in complete disarray and B.K.E. – who was then two years old – standing on a television stand, naked, waving a six-inch knife over his head. Maternal Grandmother was not at home. Although Maternal Grandmother's paramour was there, he was asleep upstairs and unaware that the Children were in the house. After unsuccessfully attempting to locate a kinship placement, CYS placed the Children in foster care, and Mother and Father were granted supervised visitation. See id. at 61-64.

The parties appeared before a hearing officer in February 2018 for a dependency hearing. The hearing officer found that, with respect to Mother, CYS had met its burden by clear and convincing evidence based on Mother's drug use and previous criminal history; her failures to submit to drug screens, comply with the terms of her probation, establish appropriate housing or

income, enroll K.B.E. in school; and her leaving Children with an inappropriate caregiver. The hearing officer thus recommended an adjudication of dependency. The court adopted the recommendation and issued an appropriate order. The court later entered an order setting forth Mother's objectives, which included demonstrating an ability to meet the Children's basic needs, maintaining a sober lifestyle, maintaining good mental health, and strengthening her parenting skills. It also changed Children's placement to kinship care with Maternal Great Aunt and Uncle.

After each of several permanency review hearings, the court found Mother had been only minimally compliant with her permanency plan and had made only minimal progress toward remedying the situations that necessitated Children's removal. CYS filed a termination petition for both Children on March 1, 2019.

At a termination hearing on June 21, 2019, a clinical psychologist, Dr. Eric Bernstein, testified that Mother had a history of drug use since she was a teenager and her drug of choice was crack cocaine. He further reported that although Mother made a good effort with the Children during the bonding evaluation, she had had some trouble dealing with the hyperactivity and behavioral issues of the younger child, B.K.E. See id. at 17-19. Dr. Bernstein opined that Mother presented well during the evaluation, but pointed out that she was currently residing in a treatment facility with structure, support, treatment, and oversight. He noted that her starting treatment was a positive sign that she was willing to get better, but said, "There seems to be somewhat

of a pattern going to treatment, relapsing, going to treatment, relapsing." Id. at 26. He explained that her most "recent relapse [was] in March, just prior to her attendance in the treatment program, and [he would be] considerate of how she will ultimately transition and adjust when exiting this program." Id.

Dr. Bernstein also observed the interaction between Children and their kinship care providers—Maternal Great Aunt and Uncle. Dr. Bernstein explained that the Children call them mom and dad, and are comfortable with both. See id. at 22. He observed that Maternal Great Aunt and Uncle balanced care well between both Children, and that the Children look to them as authority figures. See id. at 24. Overall, Dr. Bernstein opined that although there was some bond with Mother, severance of that bond would not poorly impact the Children's well-being, and would be compensated by the permanency and stability provided by Maternal Great Aunt and Uncle. See id. at 28.

Also testifying at the termination hearing was a Family Pathways outpatient therapist, Julia Cenci, who supervised visits between Mother and Children and provided Parent Child Interaction Therapy (PCIT). Cenci stated that Mother was consistent with visits and willingly took part in PCIT with B.K.E. See id. at 92, 101. However, from September 2018 through November 2018, Mother only took three of 64 drug screens, and only one of them was clean. However, during the two weeks prior to the hearing, Mother provided four clean drug samples. See id. at 110.

Family Pathways Caseworker, Morgan Davis, testified that the Children were doing well in their new placement. There, they take part in Cub Scouts and other activities and go on weekend outings to science museums and the zoo. See id. at 116-17. Maternal Great Aunt and Uncle take part in PCIT with B.K.E. one time each week. See id. at 118. They are an adoption option for the Children. See id. at 119.

Two CYS caseworkers who oversaw the case also testified. Nicole Burndett testified that she was assigned the case from February 2018 through December 2018. She said Mother was consistent with visiting with the Children and attempted to strengthen her parenting skills. See id. at 130, 136. However, Mother did not accomplish her objectives of completing drug treatment, obtaining mental health treatment, or providing for the Children's basic needs. See id. at 131-35. Jasmine Phelps testified that she has been assigned to the case since December 2018. She noted that although Mother had completed the inpatient portion of a 90-day drug treatment program at Gaiser, because the outpatient portion of the program was still ongoing, she had not completed that objective. See id. at 154. Phelps also testified that the Children have been safe and are up to date medically while in the care of Maternal Great Aunt and Uncle. See id. at 162.

Following the hearing, the trial court found that CYS established by clear and convincing evidence that grounds for termination existed pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and that termination was in the best

interest of the Children under 23 Pa.C.S.A. § 2511(b). This timely appeal followed.

Mother raises five issues on appeal.

1. Did the Orphans' Court commit an error of law when it determined that the Butler County Children and Youth Services proved by clear and convincing evidence all the elements of 23 Pa.C.S.A. sect 2511(a)(1), thus justifying the termination of the [Mother's] parental rights?

2. Did the Orphans' Court commit an error of law when it determined that the Butler County Children and Youth Services proved by clear and convincing evidence all the elements of 23 Pa.C.S.A. sect. 2511(a)(2), thus justifying the termination of the [Mother's] parental rights?

3. Did the Orphan's Court commit an error of law when it determined that the Butler County Children and Youth Services proved by clear and convincing evidence all the elements of 23 Pa.C.S.A. sect 2511(a)(5), thus justifying the termination of the [Mother's] parental rights?

4. Did the Orphan's Court commit an error of law when it determined that the Butler County Children and Youth Services proved by clear and convincing evidence all the elements of 23 Pa.C.S.A. sect 2511(b) thus justifying the termination of the [Mother's] parental rights?

5. Did the Orphan's Court commit an error of law when it determined that the Butler County Children and Yourth [sic] Services proved by clear and convincing evidence that termination of parental rights serves the needs and welfare of the child[ren?]

Mother's Br. at 5-6.

When we review an order terminating parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "If the factual findings have support in the record, we then

determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018) (citation omitted). We may reverse a trial court decision for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. See *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. See In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

Id. (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of Section 2511(a). See In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc). Here, we conclude that the trial court properly terminated Mother's parental rights pursuant to subsection 2511(a)(2).

Subsection 2511(a)(2) provides:

> (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> * * *

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental wellbeing and the conditions and causes of the

> incapacity, abuse, neglect or refusal cannot or will not
> be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection 2511(a)(2) thus requires the moving party to prove three things by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." In re K.Z.S., 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). "The grounds for termination of parental rights under subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." Id. (citation omitted).

In the instant case, Mother claims that she can and will remedy the causes of her neglect of the Children. She asserts that she entered a long-term addiction facility in March 2019, has completed the inpatient portion of the program, and is currently doing well in the outpatient portion. Mother states she has been sober since March 2019. See Mother's Br. at 16.

The trial court found that CYS established by clear and convincing evidence that grounds for termination exist under subsection 2511(a)(2):

> The Children were initially adjudicated dependent, in part, due to Mother's refusal to provide the Children with essential parental care, control or subsistence necessary for the Children's physical and mental well-being. The record evidence established by clear and convincing evidence that while Mother had made some

progress with respect to developing the parenting skills necessary for B.K.E.'s challenging behavior, she has not provided parental care, control or subsistence necessary for the Children's physical or mental well-being. Despite having many opportunities to do so, she has not adequately addressed her mental health or drug and alcohol addiction. Moreover, she still lacks employment and sufficient housing. Therefore, the conditions and causes of Mother's incapacity, neglect or refusal cannot or will not be remedied by her and continue to exist.

Trial Court Opinion, 7/10/19, at 15.

We discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to subsection 2511(a)(2). Despite Children being removed from her care in February 2018, Mother continued to abuse drugs for over a year before her Gaiser drug treatment commenced in March 2019. At the time of the hearing, Mother had still not completed that treatment, and had only recently moved from the inpatient to the outpatient program. As Dr. Bernstein noted, Mother's successful completion of the inpatient portion of treatment was not necessarily a strong indicator of her success in maintaining a sober lifestyle, as shown by her repeated pattern of relapsing following treatment. See N.T. Hearing, at 26. Moreover, he reiterated that Mother had not completed the entirety of her drug and alcohol treatment, and had not demonstrated the ability to transition and adjust to life without relapsing. See id.

Furthermore, Mother's failures to obtain consistent employment and find secure housing demonstrate her continued inability to provide for the Children's basic needs. Although we acknowledge that Mother consistently visited with Children, and attempted to improve her parenting skills,

throughout the first year of Children being removed from her care, Mother failed to make sufficient efforts to remedy the causes of their removal.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa.Super. 2006) (citation and internal quotation marks omitted). Hence, the record supports the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Children to be without essential parental control or subsistence necessary for their physical and mental well-being. See In re K.Z.S., 946 A.2d at 758. Moreover, Mother cannot or will not remedy this situation. See id.

We now turn to the analysis under Section 2511(b). Mother claims that the trial court abused its discretion because "clear and convincing evidence was not presented to show that termination of parental rights would serve the needs and welfare of the Child[ren]." Mother's Br. at 18-19.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis,

> it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

We discern no abuse of discretion as to the trial court's finding that Children's developmental, physical, and emotional needs and welfare favor termination of Mother's parental rights. Following his evaluation of the bond between Mother and Children, and between Children and Maternal Great Aunt and Uncle, Dr. Bernstein opined that although there was some bond between Mother and Children, Children's best interests would be served by the permanency and stability of remaining with Maternal Great Aunt and Uncle. We therefore affirm the order of termination.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2020