J-S26030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.A.L.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.H., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1779 WDA 2019 |

Appeal from the Order Entered October 31, 2019
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  48 Adopt 2018

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.W.H., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.H., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1780 WDA 2019 |

Appeal from the Order Entered October 31, 2019
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  49 Adopt 2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED SEPTEMBER 01, 2020**

D.H. ("Father") appeals from the order terminating his parental rights to his two children, Z.A.L.H. and D.W.H., Jr. Father argues that the Fayette County Children and Youth Services ("CYS") did not carry its burden of proving

---

[*] Retired Senior Judge assigned to the Superior Court.

a basis for terminating his parental rights by clear and convincing evidence.

We affirm.

The trial court aptly summarized the factual and procedural history of this case as follows:

> At the time of dependency, Mother was using drugs and "on the run." Father was incarcerated. Prior to the time of dependency, Fayette County Children and Youth Services (hereinafter referred to as the Agency) provided services. On May 26, 2016, ten months prior to dependency, the Agency found there was inadequate food in the home, parental substance abuse, domestic violence and lack of supervision. The children were always sick and covered in a rash. They were left in soiled diapers and [Z.A.L.H.] had scratches and bruises. The home had no stove or refrigerator. Mother on that date tested positive for marijuana and suboxone.
>
> On May 27, 2016, a safety plan was approved by the [c]ourt. Mother and children were to reside with a friend and services placed in the home to work with the family. Mother failed to comply and made continuous threats against the caseworker. On June 28, 2016, police intervened in a disturbance with Mother involving an unknown woman who threatened to shoot Mother, all occurring in the children's presence. On July 5, 2016, Mother was discharged by the home services provider.
>
> By February of 2017, the children were living with a maternal aunt, Michelle Berish. Ms. Berish took good care of them and wished to continue with placement. By Order dated March 2, 2017, this [c]ourt entered an Emergency Order placing the children in shelter care with custody to the Agency. By Order of March 10, 2017, the children were adjudicated dependent and placed with Michelle Berish. Mother was not visiting. The parents did not appear at the September 14, 2017 permanency review. At the December 14, 2017 permanency review, Mother had made no progress and Father had no contact. The first time either parent appeared in Court was for a review of March 14, 2018.

Mother had made no progress and was not visiting. Father was incarcerated. In June of 2018, parents did not appear. Michelle Berish had moved to Texas and the children were on respite with other relatives. By September of 2018, Mother appeared in Court, had no work done on the family service plan, was not visiting and was homeless. Father was in and out of prison. The children were placed with a maternal relative by marriage, Courtney Albrecht. By December 13, 2019, ICDC did not approve Berish. The children were thriving with Courtney Albrecht and she remains open and eager to adopt them. In June of 2019, the children were prospering with Courtney Albrecht, Mother was in an abusive relationship and ingesting cocaine and K-2 and had no mental health treatment.

Trial Ct. Op., filed 1/22/20 at 1-3.

CYS filed a petition to terminate Father's parental rights as to each child, citing subsections 2511(a)(1), (2), (5), and (8) of the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). The petitions listed Father's alleged failures to comply with the service plan. He allegedly failed to:

- Maintain contact and visit with the [children] to maintain a bond;

- Maintain sobriety by successfully completing a drug and alcohol assessment with a provider of his choice approved by CYS;

- Submit to random drug screens, following all recommendations of the [Drug and Alcohol] provider, openly and honestly communicating with the provider, and successfully completing treatment;

- Cooperate with the Agency by signing releases, meeting with the caseworker monthly and cooperating with service providers;

- Increase parenting skills by having as assessment if needed, by successfully completing parenting classes

- 3 -

and by demonstrating parenting skills in supervised and unsupervised visitation settings.

At a hearing, Brittany King, a caseworker for CYS, testified that she had been involved with the minor children since February 2019. N.T., Involuntary Termination of Parental Rights Proceedings, 10/31/19, at 4. She testified that Mother and Father did not complete their parenting classes because "they were never sober to complete the parenting classes." *Id.* at 6. She said that according to the foster mother, Courtney Albrecht, "mom and dad haven't seen the children since last December [2018] at a birthday party for the children." *Id.* at 14. Albrecht lives approximately an hour from the parents and has "an open door policy for the parents in terms of visitation with her[.]" *Id.* However, King said that "[t]here was no attempt to make any visits scheduled by mom or dad." *Id.* King further testified that at no point did Father complain about issues with transportation to visit the children. *Id.* at 15. King stated that although Albrecht was open to Father and Mother calling or having FaceTime with the children, they would call "about one to two times a month" until June 2019, but after that they called "hardly at all." *Id.*

King further testified that the children "love it [at Albrecht's home]" and had bonded with her. *Id.* at 16. She explained that if the court granted termination, "[Albrecht] would adopt [the children.]" *Id.* King acknowledged that she had not observed a visit between the children and parents but testified about behavioral issues that would arise with the children after they saw the parents at court hearings:

> Q [attorney for children]: Have you observed a visit between the parents and these children?
>
> A: [King]: Never.
>
> Q: Has [Albrecht] ever called to tell the agency that the children were having adverse reactions to not seeing their parents?
>
> A: No. The only time that they would have reactions like that is after seeing them as court hearings at the three month reviews.
>
> Q: And what kind of reaction would they have?
>
> A: [D.W.H., Jr.] would be acting out in daycare hitting other children, throwing chairs. [Z.A.L.H.] would be very upset, a little moody.

*Id.*

Father testified and agreed that when the children were adjudicated dependent, he was incarcerated. *Id.* at 26-27. Father testified that he was incarcerated from January to March 2018, and then returned to prison from August 2018 until October 2018 and from November 2018 to February 2019. *Id.* at 27, 28. Father also said that the last time he had seen his children was in March 2019, for 30 minutes while he was on break at work. *Id.* at 28, 42. Father said his counseling ended because he went to jail and agreed that at the time of the hearing he had not completed the drug and alcohol program and the mental health program that were terms of his service plan. *Id.* at 37, 38. He maintained that he only attended two of his drug and alcohol appointments because "I've been working crazy so I can't make it to them," and "my job is more of a priority than anything." *Id.* at 40, 41. Father also agreed that at the time of the hearing, he had not seen his children in "[a]

little less than 10 months." ***Id.*** at 44. Father also admitted that in the preceding two and a half years, he had had seen his children approximately 15 times. ***Id.*** at 45.

The trial court found "that the facts averred in the said petitions are true and correct," and granted the petitions seeking to terminate Father's parental rights. ***Id.*** at 47. This timely appeal followed.

Father raises one issue before this Court:

> Did the Trial Court err by abusing its discretion in terminating the natural parent's rights as petitioner failed to sustain its burden of proof by clear and convincing evidence to show that the parent evidenced a settled purpose of relinquishing a settled claim to the child or refused to perform parental duties?

Father's Br. at 7.

Father alleges that CYS failed to meet its burden of proof by clear and convincing evidence that he relinquished his parental duties. Specifically, he argues that "[n]one of the facts referenced herein indicate that [Father] has evidenced a settled purpose of relinquishing parental claim to his children or has refused or failed to perform parental duties." ***Id.*** at 12. He also maintains that he has not "shown a repeated and continued incapacity, abuse, neglect or refusal causing the children to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal." ***Id.***

On appeal from a trial court's order terminating parental rights, "we must accept the findings of fact and credibility determinations of the trial court

if the record supports them." ***In re Q.R.D.***, 214 A.3d 233, 239 (Pa.Super. 2019). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." ***Id.*** (citation omitted).

A party seeking to terminate parental rights bears the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re Z.S.W.***, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Where the trial court has terminated parental rights pursuant to multiple subsections of Section 2511(a), we need only agree with the trial court's decision as to one subsection, as well as to its analysis under Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we will address only the court's decision to terminate pursuant to subsection 2511(a)(1). That subsection provides that a court may terminate a parent's rights to a child if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). When considering termination under subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Here, the trial court concluded that CYS had established by clear and convincing evidence that termination of Father's rights was warranted and was in the best interests of the children. The court pointed out that Father had failed to comply with any of the terms of the family service plan, and concluded that because Father had failed to have a bond with the children, reunification would harm them.

> Due to the Father's lack of visitation and failure to complete any of the terms of the family service plan, at this point it would be harmful to the children to be reunified with him.

- 8 -

> Father has not taken an active role in their lives for almost three years and has a pattern of returning to prison. The Court termination parental rights for the best interest and welfare of the children. The children are happy and safe with a pre-adoptive mother who has cared for them and loved them as her own children. This Court will not disturb their happiness and comfort and firmly believes the appeal should be denied.

Trial Ct. Op. at 8-9.

CYS carried its burden of proof. Regarding subsection 2511(a)(1), according to Father's own testimony, he had not seen his children for the approximately 10 months preceding the termination hearing, and during the previous two and a half years, he had only seen them some 15 times, *i.e.*, on average, once every-other month. The record is bereft of any suggestion that during the six months leading up to the termination petition (and indeed, for several years), Father made any effort to discharge his parental duties.

The evidence also supports termination under Section 2511(b). According to King, the children exhibited negative behavior after seeing the parents in court and the children have bonded with Albrecht and love being at her home. Furthermore, Albrecht is willing to adopt the children. As the trial court concluded, "the children are happy and safe with a pre-adoptive mother who has cared for them and loved them as her own children." Trial Ct. Op. at 9. We cannot say that the trial court committed an error of law or abuse of discretion in granting CYS's petition to terminate Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/1/2020