J-S10020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1245 MDA 2020 |

Appeal from the Order Entered September 8, 2020
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000100-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1262 MDA 2020 |

Appeal from the Decree Entered September 9, 2020
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 051-ADOPT-2020

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: JUNE 8, 2021**

M.W.T. ("Father") appeals from the order changing the placement permanency goal for his daughter, K.T. ("Child"), to adoption, and the decree terminating his parental rights to Child. Father's counsel has filed an ***Anders***

---

[*] Retired Senior Judge assigned to the Superior Court.

brief[1] and motion to withdraw. We affirm both the order and decree of the trial court and grant counsel's motion to withdraw.

Child was born in October 2015. In early 2019, the Cumberland County Children and Youth Services ("the Agency") learned that both Father and Child's mother ("Mother") had relapsed in their cocaine addictions, and Father's mobility had been impaired due to a stroke. *See* Trial Court Opinion, filed 12/28/2020, at 3; N.T., 8/25/20, at 19. When the Agency caseworker visited Child's home, both of her parents were under the influence of drugs or alcohol to the extent that neither could appropriately care for Child. Confirmation of Verbal Order for Emergency Protective Custody, 7/16/19, at 1. In July 2019, the trial court held a shelter care hearing and entered an emergency protective order placing Child in kinship care. *Id.* Child has remained in kinship care since that time.

The court thereafter held a dependency adjudication hearing and found Child to be dependent due to her parents' drug and/or alcohol addictions and Father's physical limitations and domestic abuse toward Mother. Recommendation for Adjudication and Disposition, 8/20/19, at 1. The court ordered Father to cooperate with the Agency in developing a sobriety plan and participate in a domestic violence program. *Id.* at 2-3. The court listed the permanent placement goal as reunification of Child with her parents, with a

---

[1] *See Anders v. California*, 386 U.S. 738 (1967); *In re V.E.*, 611 A.2d 1267, 1275 (Pa.Super. 1992) (extending *Anders* to appeals from involuntary termination of parental rights).

concurrent goal of adoption. ***Id.*** at 2. The court held a judicial conference in November 2019, and permanency review hearings in January and June 2020.

The Agency filed a Petition for Goal Change Permanency Hearing in June 2020, requesting the trial court change Child's permanent placement goal to adoption. The Agency also filed a Petition for Involuntary Termination of Parental rights in August 2020, seeking termination of Father's parental rights to Child under 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b).

The court[2] held a two-day hearing on both petitions on August 25 and September 1, 2020. At the hearing, the Agency introduced evidence that Father had failed to complete domestic violence counseling and drug and alcohol outpatient services. ***See*** Trial Court Op. at 6-7; N.T. 8/25/20, at 28-30, 42-43, 54, 56. Father was discharged from his drug testing program for noncompliance in June 2020. Trial Court Op. at 7. The Agency also introduced evidence that Father stopped having weekly visits with Child in March 2020 due to the Covid-19 public health emergency. Father and Child continued with weekly telephone visits until April 2020, when Child began to refuse to speak with Father on the phone and alluded to witnessing his violence against Mother. ***See*** N.T., 8/25/20, at 32-34, 40-41, 54-55, 57. Meanwhile, the Agency presented evidence that Child "appears healthy, happy, and well-adjusted" to her kinship home, and "all of her physical and emotion[al] needs are being met." Trial Court Op. at 5; ***see also*** N.T., 8/25/20, at 35-36, 61.

_____

[2] A single judge presided over both the dependency and orphan's court cases.

Father testified that he was enrolled in a domestic abuse counseling program and was regularly attending drug and alcohol counseling. N.T., 9/1/20, at 13-14, 24. Father testified his weekly visits with Child had been happy until the onset of the Covid-19 pandemic quarantine restrictions in March 2020, and that he had tried to maintain telephone contact with Child until she refused. *Id.* at 25-37. Father claimed Mother had falsely accused him of assaulting her and explained that he had initially refused to undergo domestic violence counseling because he had previously completed the same program. *Id.* at 18-23. Father requested the court allow him more time to achieve compliance with his objectives. *Id.* at 39.

Following the hearing, the court entered an order changing the permanency goal for Child to adoption, and a decree terminating Father's parental rights to Child.[3] Father appealed.

Father's counsel has submitted an ***Anders*** Brief and motion to withdraw. Counsel seeking to withdraw pursuant to ***Anders*** must file a brief in which counsel (1) summarizes the procedural history and facts of the case, with citations to the record; (2) refers to anything in the record that arguably supports the appeal; (3) sets forth counsel's conclusion that the appeal is frivolous; and (4) sets forth counsel's reasons for so concluding. ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Counsel's withdrawal request must also state that counsel has examined the record and

---

[3] The court also terminated Mother's parental rights to Child.

determined the appeal is frivolous. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Counsel must furnish a copy of the **Anders** brief to the appellant, and advise the appellant that he or she has the immediate right to retain other counsel or proceed *pro se*. **Id.**

We find counsel's brief conforms to the above requirements. Counsel has also attached a copy of the letter he sent to Father, in which counsel enclosed a copy of his **Anders** brief and withdraw request, explaining to Father his right to pursue the appeal *pro se* or through other counsel. Father has not exercised these rights. We therefore turn to our own review of whether Father's appeal is wholly frivolous. **Santiago**, 978 A.2d at 355 n.5.

In the **Anders** brief, Father's counsel poses the following issues:

1. Did the trial court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that the child's permanent placement goal of reunification was neither appropriate, nor feasible[,] and ordered a goal change to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6531(f)?

2. Did the trial court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of appellant's parental rights in his child, and when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S. §§ 2511(a) & 2511(b)?

**Anders** Br. at 4. (suggested answers omitted).[4]

---

[4] The Agency has not submitted an appellee's brief, instead relying on the trial court opinion and counsel's **Anders** brief.

We review an order changing a placement goal to adoption or a decree terminating parental rights for an abuse of discretion. *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018); *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006). We "accept the findings of fact and credibility determinations of the trial court if they are supported by the record," but we are not required "to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010); *see also K.C.*, 199 A.3d at 473.

The Juvenile Act authorizes the trial court to determine, at each permanency hearing, the placement goal of a dependent child. 42 Pa.C.S.A. § 6351(f.1). The court makes this determination based on the following statutory factors:

> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.
>
> (5) The likely date by which the placement goal for the child might be achieved.
>
> (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
>
> (6) Whether the child is safe.

*Id.* at § 6351(f)(1)-(6). However, the controlling factor is the best interests of the child. *In re N.C.*, 908 A.2d at 823.

A party seeking termination of parental rights must present clear and convincing evidence that termination is warranted under 23 Pa.C.S.A. §§ 2511(a) and (b). **K.C.**, 199 A.3d at 473. Relevant here, Subsection 2511(a)(2) provides for termination when

> [t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **In re D.L.B.**, 166 A.3d 322, 327 (Pa.Super. 2017) (quoting **In re Adoption of C.D.R.**, 111 A.3d 1212, 1216 (Pa.Super. 2015)); **see also In re B.L.W.**, 843 A.2d 380, 387-88 (Pa.Super. 2004) ("A parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties") (citation omitted). When a parent "fail[s] to demonstrate a concrete desire or ability to remedy the problems that led to Child's placement," such as by failing to cooperate with agency services or participate in drug and alcohol treatment and mental health counseling, grounds for termination under Subsection 2511(a)(2) exist. **See, e.g.**, **In re D.L.B.**, 166 A.3d at 327-38.

- 7 -

If grounds for termination are met under a subsection of Section 2511(a), Section 2511(b) requires the court to consider the best interest of the child by giving "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); **K.C.**, 199 A.3d at 474. "The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability." **In re D.L.B.**, 166 A.3d at 328 (quoting **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013)).

The instant goal-change order stated the court found Father "has not been fully cooperative with his goals and objectives . . . provided minimal drug screens . . . abused crack/cocaine during the review period[,] engaged in domestic violence with [Mother, and] never made 30 consecutive days of negative drug screens in 13 months of placement." Permanency Review Order, 9/11/20, at 1. The court also found there was "minimal progress toward alleviating the circumstances which necessitated the original placement," and that visitation with Father was "not adequate, in that the child refuses to have contact with [F]ather." **Id.** at 2.

The decree terminating Father's parental rights to Child stated the court found Child has been in Agency care for more than 13 months, Father was in denial of addiction problems and unable to provide proof of 30 consecutive days of sobriety, and that termination was warranted by the parents' "failures to fulfill their parental duties" and "Child's right to have proper parenting [and]

- 8 -

fulfill her potential in a permanent, healthy, and safe environment." Final Decree, 9/8/20, at 1.

In its Rule 1925(a) opinion, which addressed both the order and decree, the court noted "Father's non-verbal communications over the two days of in-person hearings were like Jekyll and Hyde." Trial Court Op. at 8. The court stated that on "the first day he was unable to sit still, excusing himself numerous times to use the bathroom, and overall breaking social distancing rules that were enforced by the court," but on the second day, "Father was docile and sedentary." *Id.* The court also drew the following conclusions:

> Father's conduct throughout the reviewed thirteen (13) months demonstrates that the circumstances leading to the child's removal and placement continue to exist; specifically, Father's substance abuse addiction that fuels his anger management issues, both of which continue unabated notwithstanding the considerable resources offered to him by the Agency and, to some degree, support of the family.
>
> . . .
>
> Father clearly knew from August 2019 what abilities were expected of him, sobriety and temper regulation, but he steadfastly disputed or attempted to circumvent the expectations that would provide the proof that he was meeting these tangible objectives. Indeed, what he has done – relapsed, lied, denied. Father does not want help because in his drug[-]addlepated mind he does not need help. This repeated and continuous incapacity by Father leaves [Child] without crucial parental care and control necessary for her own well-being; moreover, the underlying cause of the incapacity is a refusal on Father's part that has not, cannot, or will not be remedied by him.
>
> Father's disability should not be inflicted upon the child. [Child] appears now to be in an environment with proper parenting, with people who are dedicated to the promotion of her development. Unlike the situation in Father's home, [Child] is now in [a] home that is a healthy or safe environment.

- 9 -

> The above reasoning is singularly focused on Father's own willful failure to minimally address and then to correct his addictive behaviors and domestic violence that led to the child's removal. . . . [H]owever, the record is replete with other equally clear and convincing proofs of Father's unaltered incapacity to meet the child's needs and promote her welfare. Many opportunities have been given to Father and sadly all have been missed.

*Id.* at 17-18.

Counsel states that after reviewing the record and relevant law, counsel concluded that any argument furthering the above issues would lack a reasonable basis in fact and law, and that the appeal is wholly frivolous. We agree that the issues counsel flagged are frivolous and our independent review has uncovered no non-frivolous issues. We therefore affirm both the order and decree under appeal. We also grant counsel's motion to withdraw.

Order affirmed. Decree affirmed. Motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2021

- 10 -