J-S16017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 274 EDA 2021 |

Appeal from the Order Entered January 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000851-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 275 EDA 2021 |

Appeal from the Order Entered January 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000993-2017

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 20, 2021**

J.S. ("Father") appeals from the order terminating his parental rights to A.D.S. ("Child") and changing Child's permanency goal to adoption. We conclude the trial court did not abuse its discretion in terminating Father's

_____

[*] Former Justice specially assigned to the Superior Court.

parental rights, and that Father abandoned his challenge to the change of Child's permanency goal. We therefore affirm.

Child was born in March 2017. He tested positive for opiates at birth and, upon his release from the hospital in April 2017, the Philadelphia Department of Human Services ("DHS") obtained an order of protective custody and placed Child in foster care. In June 2017, Child was adjudicated dependent. In November 2019, DHS filed a petition to terminate Father's parental rights and a petition to change Child's permanency goal to adoption. The court held a hearing in January 2021.

The Community Umbrella Agency ("CUA") case worker, Iesha Shaw, testified. She was the case manager since November 2020 and reviewed the case file. N.T., 1/4/21, at 11. Father's single case plan objectives were to submit to three random drug screens, attend supervised visits with Child, and attend Child's medical appointments. *Id.* at 21. Child did not have medical appointments while Shaw was the caseworker, and the court was not scheduling random drug screens due to the COVID-19 pandemic. *Id.* at 32-33, 37.

Shaw testified that Father's visits are supervised,[1] and Father does not have suitable housing for Child. *Id.* at 24. She testified that a permanency worker conducted a home assessment in September 2020, and the home was

_____

[1] Shaw testified that she did not believe he ever had unsupervised visits with Child. *Id.* at 24. However, Father did have unsupervised visits in 2018. The visits returned to supervised because Father allowed Mother to visit with Child, which was prohibited by the court order allowing unsupervised visits.

- 2 -

deemed not appropriate for reunification because a family member who resided at the home had an open case with DHS and therefore the family member would not have been cleared. *Id.* at 24-25. No further assessment was conducted because Father did not report any change in housing since that time. *Id.* at 25.

Shaw testified that Child has been in a pre-adoptive foster home since September 2018. *Id.* at 26. She testified that Child does not share a bond with Father. *Id.* at 27. She stated that Child recognizes Father as an adult in his life, but does not look to him as a caregiver, to meet his daily, medical or emotional needs, or to provide safety and stability. *Id.* at 27-28. In contrast, Child has a close relationship to his foster mother, who he looks to for care and comfort, who meets his daily, medical, and emotional needs, and who provides safety and stability. *Id.* at 28-29. Shaw testified Child would not suffer irreparable harm if Father's parental rights were terminated and she believes it would be in Child's best interest to terminate Father's parental rights. *Id.* at 29-30.

On cross-examination, Shaw acknowledged that Father attended all visits with Child. *Id.* at 33. She testified that she saw Father on November 9, 2020, and attempted to contact him by telephone on three occasions, but only left a message on one occasion. *Id.* at 37-39.

Roya Paller also testified. At the request of Child's legal counsel, she conducted a visit to the home of the resource parent in 2019 and a supplemental visit in September 2020. *Id.* at 54-55. Paller spoke with Child

and determined he was very attached to his foster mother. *Id.* at 55. Paller believed there would be irreparable harm if Child was removed from his foster mother's care, as she believed Child had a mother-child bond with his foster mother. *Id.* at 56. On cross-examination, Paller testified that she did not observe Child with Father. *Id.* at 59.

Father testified that other than at the start of the pandemic, he consistently attended visits with Child. *Id.* at 62-63. He further testified that in May 2018, the court ordered that he was to have unsupervised visits with Child for eight hours on Saturdays. *Id.* at 63. The visits reverted to supervised because he allowed Mother to have contact with Child, which was prohibited by court order. *Id.* at 71. He is employed at Warren Express. *Id.* at 64. Father attended all medical visits that were offered to him and completed parenting classes and drug treatment. *Id.* at 64-66. He has lived at his current location since March 2020, *id.* at 67, and believed that the DHS involvement with his niece, who he lived with, had been cleared. *Id.* at 68. He testified that Child "loves seeing [him]" and is excited to see him at visits. *Id.* Father testified that he had not tried to contact Shaw after meeting her in November 2020. *Id.* at 74.

In its closing argument, DHS conceded that Father was employed and that he completed the drug and alcohol objective but argued Father has not taken enough steps over the nearly four years that Child has been in care to put himself in a position to parent Child. *Id.* at 75.

The trial court terminated Father's parental rights to Child, finding termination proper under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), and § 2511(b). *Id.* at 84. The court found Father has not been fully compliant with the single case plan objectives and did not make sufficient progress to alleviate the need for placement. *Id.* It found that Father visits Child, but that the visits currently are supervised visits, and his home has not been cleared for reunification. *Id.* It further found that Child's developmental, physical, and emotional needs are being met by his foster mother and that he will not suffer irreparable harm if Father's parental rights are terminated. *Id.* The court also changed Child's permanency goal to adoption.

Father filed notices of appeal from both orders. He raises the following issues on appeal:

> 1. Whether the Trial Court erred by terminating the parental rights of Appellant, Father, under 23 Pa.C.S.A. § 2511 subsections (a)(1), (a)(2), (a)(5) and (a)(8)?
>
> 2. Whether the Trial Court erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of Appellant's parental rights best serves the Child's developmental, physical and emotional needs and welfare?

Father's Br. at 4.

"A party seeking termination of parental rights bears the burden of establishing grounds for termination 'by clear and convincing evidence.'" *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018) (quoting *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008)). "Clear and convincing evidence is evidence 'that is so clear, direct, weighty, and convincing as to enable the

trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.'" **Id.** (quoting **In re Z.S.W.**, 946 A.2d at 728-729). "We accept the findings of fact and credibility determinations of the trial court if the record supports them." **Id.** "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **Id.**

Termination of parental rights is controlled by Section 2511 of the Adoption Act. **See In re L.M.**, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511(a), "the focus is on the conduct of the parent," and the party seeking termination "must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." **Id.** If "the court determines that the parent's conduct warrants termination of his or her parental rights," under Section 2511(a), it must then "engage in the second part of the analysis pursuant to Section 2511(b)" to determine whether "the needs and welfare of the child under the standard of best interests of the child." **Id.**

Father first argues the court erred in finding termination proper under Section 2511(a). The court terminated Father's rights under multiple subsections of Section 2511(a); we will address only subsection (a)(2). We need only agree with the court's determination of any one subsection of Section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Section 2511(a)(2) requires the moving party to produce clear and convincing evidence of three elements: (1) the parent's repeated and

- 6 -

continued incapacity, abuse, neglect or refusal to discharge parental duties; "(2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003); *see also* 23 Pa.C.S.A. § 2511(a)(2).

Father argues the court erred in terminating his parental rights under Section 2511(a)(2). He argues the case worker testified that his single case plan objectives were to submit to random drug screens, visit with Child, and attend Child's medical appointments. He maintains that, during the time she was case manager, Father was not called for random drug screens, the court was not offering them, there were no medical appointments for Child, and Father consistently visited with Child. He adds that he successfully completed drug treatment and a parenting class. He further claims the case worker did not assess his home and that his home was appropriate for reunification.

The trial court did not err in finding termination proper under Section 2511(a)(2). Although Father completed some of his single case plan objectives, and consistently visited with Child, other evidence supported the conclusion that the reasons that Father has been unable to parent Child will not resolve. At the time of the filing of the petition and the hearing, Father's visits with Child continued to be supervised. Further, a home assessment in September 2020 determined Father's home was not appropriate for reunification, and Father never told DHS of any change in his housing. Child

had been in care for almost four years, and it was not an abuse of discretion for the court to find that DHS established, by clear and convincing evidence, that Father had a continued incapacity, abuse, neglect, or refusal to discharge parental duties, that the incapacity caused Child to be without parental care, control, or subsistence, and that the cause for the incapacity cannot or will not be remedied.

Father next claims the court erred in finding termination proper under Section 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Section 2511(b) requires the trial court to determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child[.]" *In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa.Super. 2005). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *Id.* at 1287. The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.*

However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation and internal quotation marks omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013).

- 8 -

Father argues that he has been consistent in attending visits with Child. He points out that, although the case worker testified that Child would not be irreparably harmed if Father's rights were terminated, she saw Child interact with Father for only five to ten minutes. Further, he notes that Paller, who testified that Child had a bond with his foster mother, did not observe Child with Father. Father argues that he attended visits with Child, including unsupervised eight-hour visits, Child loved to see Father at the visits, and he was ready to take care of Child.

The trial court did not err or abuse its discretion in finding termination would best serve Child's physical, developmental, and emotional needs and welfare. Shaw and Paller testified that Child had a parent-child bond with his foster mother, whom he looked to for love and support. Further, the case worker testified that she did not believe Child looked to Father for support or to care for his daily, medical, and emotional needs.

Father filed a Notice of Appeal from the order changing Child's permanency goal to adoption and a Rule 1925(b) statement purporting to challenge the goal change.[2] However, Father did not include a challenge to

_____

[2] The Rule 1925(b) statement for the appeal of the order changing the goal to adoption raised the following issues:

> 1. The evidence was insufficient for the Court to find, by clear and convincing evidence, to change the goal to adoption under 2511(a).

*(Footnote Continued Next Page)*

the order in his statement of questions involved or any argument in his appellate brief regarding the goal change order. He has therefore abandoned the claim on appeal.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2021

---

2. The evidence was insufficient for the Court to find, by clear and convincing evidence, that changing the goal to adoption best serves the Child's physical and emotional needs and welfare under 2511(b).

Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) at ¶¶ 1-2. As discussed above Section 2511 addressed the termination of parental rights, not a permanency goal change.