OPINION BY McLAUGHLIN, J.:
*472 K.R. ("Mother") appeals from the decree involuntarily terminating her parental rights to her natural child, K.C. K.C.'s paternal grandparents, L.C. and P.C. ("Paternal Grandparents"), had petitioned on May 2, 2017, to involuntarily terminate Mother's parental rights. They alleged that Mother had, for at least six months immediately prior to the filing of the petition, failed to perform parental duties. See 23 Pa.C.S.A. § 2511(a)(1). We affirm.
The trial court held several hearings on the petition, during which Paternal Grandparents each testified. Paternal Grandmother testified that K.C. was born in September 2011, and at the time of the hearing, was six years old. She said that due to Mother's substance abuse issues, K.C. has been in Paternal Grandparents' custody since K.C. was 15 months old. Paternal Grandparents obtained physical and legal custody of K.C. in August 2014 through a dependency proceeding. Paternal Grandmother said that although the dependency court granted Mother 12 hours of supervised visits per week, Mother visited K.C. for no more than four hours per week for less than a year. Paternal Grandmother further testified that in late 2015, Mother filed a custody complaint and the court granted her two hours of supervised visits per week. Mother then visited the child two hours a week until August 2, 2016, which was the last time Mother visited K.C.
According to Paternal Grandmother, Mother's only attempt at contact during the six-month period preceding the petition (i.e. , between November 2, 2016 and May 2, 2017) was a text message Mother sent to Paternal Grandmother in December 2016, at 10:30 p.m., asking to speak to K.C., who was asleep. Otherwise, according to Paternal Grandmother, during the relevant period, Mother did not inquire as to K.C.'s welfare; send K.C. correspondence, a birthday card, birthday present, or Christmas present; ask to see K.C.; or file any petitions to have contact with K.C. See Trial Court Opinion, filed May 30, 2018, at 6-7. Paternal Grandfather's testimony generally corroborated that of Paternal Grandmother.
Mother testified by telephone from prison and said that she had also been in prison in September 2016 and October 2016, after which she was a resident at a rehabilitation center until sometime in November 2016. She said she was again in prison from January 2017 through April 2017, and thereafter in a boot camp until the filing of the termination petition. See id. at 2-3, 5-6.
Mother conceded on cross-examination that she stopped visiting K.C. in August 2016. Mother said the visits ended because Paternal Grandmother had claimed that Mother had a contagious infection and the visitation supervisor told Mother that she could not visit K.C. until she got a further court order. Mother said she filed a petition for unsupervised visitation but did not *473 pursue it because she was unable to afford an attorney. Although she said on cross-examination she did not know she could proceed pro se , she also admitted that she did know she might have qualified for legal aid. She also testified that during her first 30 days in boot camp, she was not allowed to make phone calls because she was on a "black out period." N.T., 10/6/17, at 63-64.
Mother also testified about her contact with K.C. during the six months leading up to the termination petition. She said that during the relevant six months, she sent cards, letters, and pictures to K.C. As corroboration, she presented the testimony of her own mother, who produced cell phone records showing that on K.C.'s birthday, September 4, text messages were sent from Mother's telephone to Paternal Grandmother's telephone. Her mother also testified that Mother had sent a text message to Paternal Grandmother on Christmas Day 2016. See id. at 5-11. However, Mother presented no corroborating evidence that she sent cards, letters, or pictures.
The Court found Mother's testimony not credible, and explicitly credited Paternal Grandparents' testimony. Id. at 9-10. The court also found that Mother offered no reasonable explanation for her lack of contact during the relevant six-month period (November 2, 2016, to May 2, 2017), and despite her limited financial means, "she could have used the services of legal aid" to obtain visitation with K.C. See id . at 9-13. The court found that Mother had made no attempt at contact while she was in prison, stating that she "did not exert herself whatsoever" or "utilize resources to maintain a place of importance in her child's life." Id. at 12 (citing In re R.I.S. , 614 Pa. 275, 36 A.3d 567, 573 (2011) (plurality) ). The court also reviewed the relationship between K.C. and her Paternal Grandparents and determined that termination of Mother's rights would "best serve the developmental, physical and emotional needs and welfare for the child." See id. at 13-17.
Mother appealed, and in response to an order pursuant to Pa.R.A.P. 1925(b), Mother filed a Concise Statement of Errors Complained of on Appeal.
Mother's brief on appeal lists two issues:
1. Did the trial court comply with the terms of 23 Pa.C.S.A. § 2511(a)(1) in finding that for a period of at least six (6) months prior to filing, the natural Mother failed to perform parental duties[?]
2. Did the trial court comply with the terms of 23 Pa.C.S.A. § 2511(b) in giving primary consideration to the developmental, physical and emotional needs and welfare of the child[?]
Mother's Br. at 1.
A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." In re Z.S.W. , 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." Id. at 728-729 (internal quotation marks and citation omitted). We accept the findings of fact and credibility determinations of the trial court if the record supports them. See In re C.M.C. , 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. Id.
Here, the trial court terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(1). That subsection requires that the parent's conduct during the six months preceding *474 the filing of the termination petition demonstrate either a settled intent to relinquish parental rights, or a refusal or failure to perform parental duties. 23 Pa.C.S.A. § 2511(a)(1) ; Z.S.W. , 946 A.2d at 730. If the court finds Section 2511(a)(1) satisfied, it must then consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. See 23 Pa.C.S.A. § 2511(b).
Mother first argues that the evidence was insufficient to meet the requirements of subsection 2511(a)(1) because Mother did not know that failing to perform parental duties for six months could lead to the termination of her parental rights. Mother's Br. at 5. Mother waived this argument by not including it in her Rule 1925(b) Statement. Her Rule 1925 ) Statement listed four specific issues, none related to her alleged unawareness that failing to discharge parental duties for six months could lead to her losing her parental rights:
1. The Judge failed to consider the attempted contacts with the minor child by the Natural Mother during her incarceration which was prevented by the paternal grandparents.
2. The Judge failed to consider the rules and regulations of the Natural Mother's incarceration which inhibited contact with the outside including her child.
3. The judge failed to allow drug testing of the Paternal Grandfather when testimony indicated his consumption of illegal drugs.
4. The Judge failed to consider the fact that the Paternal Grandparents' other son (with a lengthy criminal record) was allowed to reside in their home with constant contact with the minor child.
Concise Statement of Errors Complained of on Appeal.
Her failure to include this issue in her Rule 1925(b) Statement results in waiver. See In re C.M. , 882 A.2d 507, 515 (Pa.Super. 2005). In any event, her claimed unawareness is irrelevant. Her alleged lack of knowledge of the law did not eliminate her obligation to perform parental duties, or undermine the conclusion that she failed to discharge her duties during the relevant six month period. Mother's first issue merits no relief.
Mother next argues that during the six-month period, she in fact attempted to communicate with K.C. Mother's Br. at 5. Although Mother testified about alleged communications, and presented some corroboration, the trial court did not credit Mother's evidence on this point. Rather, it believed Paternal Grandparents' testimony that other than the single, late-night text while K.C. was asleep, Mother made no attempts at contact. We defer to those credibility determinations. In re Adoption of S.P. , 616 Pa. 309, 47 A.3d 817, 826-827 (2012).
She also includes a confusing discussion of the trial court's faulting her for failing to petition for relief from the alleged suspension of supervised visitation due to Paternal Grandmother's alleged interference. This discussion, however, does not explicitly argue that the trial court erred in this regard, or cite and apply any authority to support such an argument. She has therefore waived any such claim. See Pa.R.A.P. 2119(a) ; Commonwealth v. Maris , 427 Pa.Super. 566, 629 A.2d 1014 (1993) (quashing appeal where substantial defects prevent this Court from conducting meaningful appellate review). Moreover, the trial court did not believe Mother's testimony that her visitation ended due to Paternal *475 Grandmother's actions, and pointed out Mother could have attempted to obtain visitation through custody court, but failed to do so despite acknowledging that she could have sought free legal aid. See Trial Ct. Op. at 9-10.
Mother next asserts that the trial court erred in determining that termination of her parental rights was in K.C.'s best interest. She claims that because Paternal Grandparents' son ("Paternal Uncle"), who has a criminal record, lives in Paternal Grandparents' basement, K.C. "undoubtedly" will have contact with him "on a constant or at least frequent basis." Mother's Br. at 7.[1]
This issue is meritless. The trial court was unpersuaded by Mother's evidence regarding K.C.'s paternal uncle, and instead credited Paternal Grandmother's testimony that Paternal Uncle lives in a basement apartment separate from the main residence. See Trial Ct. Op. at 15-16. The court noted that there was no evidence of any contact between K.C. and Paternal Uncle and observed that Children & Youth Services had investigated Paternal Grandparents' home and had found it suitable. Id. We defer to this credibility determination ad have found no abuse of discretion or error of law.
Finally, Mother argues that the trial court should have granted her request for drug testing of Paternal Grandparents. Mother testified that at some time in approximately 2010 or 2011, Paternal Grandfather used marijuana. The trial court refused to order drug testing, stating that even assuming Mother's testimony was true, there was an insufficient basis to order testing because the only alleged marijuana use occurred before K.C.'s birth. This was not an abuse of discretion. No evidence here suggests an ongoing drug or alcohol problem, and the failure to order testing based on a single, remote occurrence does not undermine the court's conclusion that termination was in K.C.'s best interest. To the contrary, the trial court carefully examined the evidence and child's "developmental, physical and emotional needs and welfare," before concluding that terminating Mother's parental rights was in K.C.'s best interest. Id. at 13-15. We therefore affirm the decree of the trial court granting the Petition for Termination of Mother's Parental Rights.
Order affirmed.

Mother waived her similar argument that K.C.'s biological father will also be present in K.C.'s life by not including it in her Rule 1925(b) Statement.