J-S03015-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE INTEREST OF: C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: A.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1363 WDA 2019 |

Appeal from the Order Entered August 9, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000200-2018

| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: A.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1364 WDA 2019 |

Appeal from the Order Entered August 9, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000199-2018

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:         FILED MAY 27, 2020

     A.S. ("Mother") appeals from the orders terminating her parental rights to A.S., born in December 2009, and C.S., born in August 2012, (collectively "Children"). We conclude that the trial court did not abuse its discretion in

_____

[*] Retired Senior Judge assigned to the Superior Court.

terminating Mother's parental rights, and that termination best meets the needs and welfare of Children. We therefore affirm the trial court orders.

On July 5, 2017, CYF obtained custody of Children after a friend of Mother died of an overdose in the family home. Children, who were four and seven years old, were present in the home at the time of the overdose. CYF placed Children with their paternal grandparents.[1] The Children were adjudicated dependent on August 9, 2017, after Mother stipulated to dependency based on her substance abuse and domestic violence issues. The court ordered that she undergo substance abuse and domestic violence treatment and that she visit with the Children.

On September 21, 2018, CYF filed termination petitions. The court held a hearing on the petitions on August 9, 2019, during which it heard testimony from a CYF case worker, Maeling Thompson; a therapist for A.S., Teri Pentz; a therapist for C.S., Samantha Strum; and a forensic psychologist, Gregory Lobb. Mother also testified, and the court heard representations from Children's legal counsel, Courtney Potter, Esquire.

At the start of the hearing, Mother stipulated that the conditions leading to the Children's removal continued to exist. She had not completed either substance abuse or domestic violence treatment, and did not have stable housing. Mother admitted that she visited the children inconsistently. Therefore, she stipulated that her conduct met the criteria for termination

_____

[1] The father of Children passed away in March 2016, prior to CYF's involvement with the family.

under Section 2511(a)(8). However, she contended that because termination did not serve the needs and welfare of Children, Section 2511(b) was not satisfied. See N.T. Hearing, 8/09/19, at 7-8.

Mother testified that she started using drugs when she was younger. The longest period of sobriety she had maintained was seven years while the Children's father was alive. However, she relapsed with the stress of him getting sick. She then went to a treatment facility, but relapsed again after he died. Mother confirmed that a friend of hers died of an overdose while the Children were present in the house, and that since the children were placed with their grandparents, her visitation has been sporadic. See id. at 76.

The CYF case worker, Maeling Thompson, testified that since their placement with paternal grandparents, the Children have been undergoing trauma therapy concerning their father's death, and their exposure to drug use and domestic violence. The Children have a good relationship with paternal grandparents. They appear happy and have the opportunity to engage in many different activities. Ms. Thompson testified that, with their paternal grandparents, the Children are able to just enjoy being kids. See id. at 18. Finally, Ms. Thompson explained that, despite retaining authority to make educational and medical decisions for the Children, Mother has not attended any school or medical appointments for the Children since CYF has been involved. See id. at 33.

Teri Pentz, therapist for A.S., testified that she has been providing treatment for A.S. since July 2017. She is a trauma counselor, and began

treating A.S. because A.S. had recently lost her father and was living with her grandparents after being separated from her mother. Ms. Pentz testified that A.S. has consistently told her that she does not want to live with Mother or visit her. See id. at 45-46. A.S. does not include Mother in a list of trusted adults in her life. See id. at 54. Finally, Ms. Pentz explained that while Mother had the opportunity to be involved with A.S.'s therapy, she never took advantage of the opportunity. See id. at 48.

Samantha Strum, therapist for C.S., also testified at the hearing. Ms. Strum, also a trauma counselor, stated that she had been providing treatment for C.S. since February 2018, because of the loss of his father and separation from his mother. Ms. Strum testified that, despite his young age, C.S. remembers that, when he lived with her, his Mother did not take care of him. See id. at 61. Ms. Strum explained that C.S. was not upset about the past mistreatment because he does not see Mother much and she does not call. See id. at 63. C.S. has told Ms. Strum that he would like to live with his grandparents permanently and would not like to continue visits with Mother. See id. at 65. C.S. did not consider Mother a trusted adult. Finally, Ms. Strum confirmed that Mother similarly had the opportunity to be involved with C.S.'s therapy, but never chose to do so. See id. at 72.

Next, Gregory Lobb, Ph.D., a psychologist, testified as to the results of his court-ordered evaluation of the family. He testified that during his evaluation of Mother, he learned about her drug use, drug addiction, and domestic violence issues. Mother informed him that while the Children were

in her care, she was in an abusive relationship where she was both the perpetrator and victim of abuse, often fueled by substance abuse, and that the police were often at the home. She indicated that she had a history of drug abuse related to opiates since about age twenty-four, and alcohol abuse. She explained that although she had a long period of sobriety, she relapsed after her husband became ill. See id. at 111-12.

With respect to Mother's relationship with the Children, Dr. Lobb testified that they had an ambivalent-insecure attachment, explaining that because of the past drug addiction and domestic violence, the Children are unable to be certain they can count on Mother to be there for them and take care of their needs. See id. at 115-16. He testified that "when a parent is struggling with addiction, domestic violence, their own mental health issues, sometimes those things can get in the way of that normal kind of development for the child where they can learn that this parent, they can count on them." Id. at 116.

With respect to the Children's relationship with their grandparents, Dr. Lobb testified that the bond with paternal grandmother is the "healthiest [] attachment they know." Id. at 120. He described their attachment as a secure attachment, "[s]he's their go to parent. She is their psychological parent." Id. at 130. Finally, Dr. Lobb testified that the grandparents have been providing stability and consistency, which has been a huge benefit for the Children.

Finally, at the hearing, Courtney Potter, Esq., the Children's advocate explained the Children's position: "Both times that I met with the Children

they were clear. They want to stay with their grandparents. They want to be adopted. They do not want to have any further visitation or contact with their Mother." Id. at 154-55 (some capitalization provided).

The trial court granted CYF's petitions to terminate Mother's parental rights to Children. Mother filed timely notices of appeal from the orders.

Mother raises the following issue on appeal:

1. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [Children] pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Mother's Brief, at 6.

"A party seeking to terminate parental rights bears the burden of establishing grounds for termination by clear and convincing evidence." In re Adoption of K.C., 199 A.3d 470, 473 (Pa.Super. 2018) (citation and internal quotation marks omitted). "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." Id. (citation and internal quotation marks omitted).

When reviewing an order granting termination of parental rights, "we accept factual findings and credibility determinations supported by the record, and we assess whether the common pleas court abused its discretion or committed an error of law." In re Adoption of K.M.G., 219 A.3d 662, 670 (Pa.Super. 2019) (en banc) (citation and internal quotation marks omitted). A trial court decision may be reversed for an abuse of discretion "only upon

demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012) (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act, and requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Here, Mother does not contest the trial court's finding that her conduct warranted termination under subsection (a)(8). Rather, Mother contends that the trial court erred when it determined that it was in the Children's best interest to terminate her parental rights pursuant to subsection (b). She argued that the Children need her in their life, and that they would benefit from therapy with her, and from her and paternal grandparents jointly undergoing therapy to help their relationship, claiming that their estrangement does not serve the Children's needs and welfare. See Mother's Brief, at 18-20. Mother's claim does not merit relief.

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if

termination of parental rights is in the child's best interest. 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child.

> One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond that the child has with the parent, with close attention paid to the effect on the child of permanently severing any such bond. Moreover, the fact that a child has a bond with a parent does not preclude the termination of parental rights. Rather, the orphans' court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary and beneficial relationship.

In re Adoption of K.M.G., 219 A.3d at 674-75 (citations and internal quotation marks omitted). Furthermore, the court "should also consider the child's relationship with his foster parents and whether the foster parent provides to the child the intangibles such as [] love, comfort, security, and stability." Id. at 675 (citations and internal quotation marks omitted).

Here, the trial court found that terminating Mother's parental rights was in the best interest of the Children and would best serve their developmental, physical, and emotional needs and welfare. See Trial Court Opinion, 10/17/19, at unnumbered page 9. The court explained that it conducted a bond analysis and considered testimony from the CYF caseworker, the two trauma therapists, and Mother, in addition to the expert testimony and report of Dr. Lobb. The court highlighted the Children's good relationship with their grandparents, and the fact that they were happy living in the grandparents' home. See id. at unnumbered page 6. The trial court also considered that

both Children remembered Mother not caring for them when they lived with her.

The court further explained:

At the TPR hearing, this court also learned that Mother has not attended any of the Children's medical appointments, no school appointments, Mother never reached out to either therapists, and there were periods of time that Mother did not attend any visits. This court acknowledges that [the] relationship between paternal grandparents and Mother was somewhat contentious. However, parental grandparents have not interfered with Mother meeting her objectives, engaging in the Children's medical treatment, school involvement, nor therapy session. Both Children have expressed that they no longer wish to visit with their Mother. They have expressed that they feel safe, loved and properly cared for with their grandparents. As such, this court believes it is in the Children['s] best interest to terminate the parental rights of Mother and free the Children for adoptions.

Id. at unnumbered page 9 (some capitalization provided).

The record supports the trial court's factual findings. Upon review, we conclude that the court did not abuse its discretion in finding that terminating Mother's parental rights would best meet the Children's developmental, physical, and emotional needs and welfare. The testimony established that although the Children have some bond with Mother, termination of Mother's parental rights, and adoption by paternal grandparents—with whom the Children have a secure bond—would best serve their needs and welfare. Therefore, we conclude that the trial court's termination of Mother's parental rights under Sections 2511(a)(8) and 2511(b) is supported by the record. Accordingly we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/2020