J-A17012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 673 EDA 2021 |

Appeal from the Order Entered February 24, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000423-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 674 EDA 2021 |

Appeal from the Order Entered February 24, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002489-2018

BEFORE:  McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED SEPTEMBER 08, 2021**

A.H. ("Mother") appeals the order terminating her parental rights to

D.H. ("Child").[1] She claims that the trial court abused its discretion because

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother filed a separate notice of appeal from the order changing Child's permanency goal from reunification to adoption. This Court consolidated
*(Footnote Continued Next Page)*

the evidence did not support the termination of her parental rights, and because the termination did not best serve the needs of Child. We affirm.

Child was born in June 2016 to Mother and an unknown father.[2] The Philadelphia County Department of Human Services ("DHS") became involved in this matter after receiving a report on October 26, 2018, that Mother had overdosed on synthetic cannabis known as "K2" in public while Child was in her care. N.T., 2/24/1, at 10. DHS implemented a safety plan that allowed for Child's maternal aunt to care for Child and filed a dependency petition on November 18, 2018. *See* Dep. Pet., 11/8/18, at 1. Following a dependency hearing on November 20, 2018, the court adjudicated Child dependent.

Mother's single plan case objectives were to cooperate with Community Umbrella Agency ("CUA") services; attend the Clinical Evaluation Unit ("CEU") and participate in random drug screening; attend medical appointments with Child; follow up with Achieving Reunification Center ("ARC"); and attend parenting classes. N.T., 2/24/21, at 10-11.

Mother did not cooperate with CUA and often refused to attend random drug testing. *Id.* at 11-12. Nor did she provide proof, in October 2020, that she had completed a drug and alcohol treatment program at the Wedge

---

Mother's appeals *sua sponte* on June 22, 2021. Mother's issues on appeal do not address the goal change and, accordingly, we will not address it in this appeal.

[2] On February 24, 2021, the court terminated the parental rights of any unknown father. As of the date of the filing of this memorandum, no father has appealed the termination.

Recovery Center in 2019, and based on Mother's own comments, caseworkers believed she was still using drugs. *Id.* at 15-19. Additionally, there was at least one incident in June 2020 where Mother, naked except for a mask, attempted to break into maternal aunt's home at night. Child was present during the incident and was very upset by it. *Id.* at 19-21, 111-118. Throughout the pendency of the case, Mother never graduated to unsupervised visits, particularly after she became aggressive with visitation coaches and caseworkers. *Id.* at 23-30. Mother completed some parenting classes at Episcopal Community Service, but not at ARC; as of the termination hearing date, she was still attending classes. *Id.* at 31-32. She did not provide proof of attendance at past parenting courses until the day before the termination hearing. *Id.* at 32.

At a permanency review hearing in June 2019, the court found Mother was in full compliance with the permanency plan. However, her compliance with the plan decreased as time passed. In January 2020, Mother was in substantial compliance with the permanency plan. In June 2020, she was in minimal compliance with the permanency plan.

On November 23, 2020, DHS filed a petition seeking to involuntarily terminate Mother's parental rights. Following a hearing on February 24, 2021, the trial court granted DHS' petition for involuntary termination of Mother's parental rights to Child under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8), and 2511(b). It also changed Child's permanency goal to adoption. This timely appeal followed.

Mother raises two issues before this Court:

> 1. Whether the trial court committed an error in law or abused it's [*sic*] discretion by involuntarily terminating the parental rights of [Mother], where such determination was not supported by clean [*sic*] and convincing evidence establising [*sic*] grounds for termination pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), §§ 2511(a)(2), §§ 2511(a)(5), and §§ 2511(a)(8)[?]
>
> 2. Whether the trial court committed an error in law or abused it's [*sic*] discretion by involuntarily terminating the parental rights of [A.H.], where such determination did not best serve the developmental, physical, emotional needs of the child, nor the welfare of the child as required by the Adoption act, 23 Pa.C.S.A. § 2511(b).

Mother's Br. at 8.

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We may reverse a trial court decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012).

Mother argues that she had completed drug and alcohol treatment through Wedge, parenting classes, anger management, and that in January 2020, CUA found Mother in substantial compliance and recommended that visits be expanded to supervised visits in Mother's home. Mother's Br. at 15.

- 4 -

Accordingly, she maintains the evidence was not sufficient to support termination. *Id.* Additionally, Mother argues that termination of parental rights was not in Child's best interests.[3]

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence*. See In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

_____

[3] Mother raises this issue in her statement of questions. However, her brief contains several blank, but numbered, pages, minimal argument regarding Section 2511(a), and no argument at all regarding Section 2511(b). Her summary of the argument, similarly, does not address Child's best interests except to note that she has parented Child since birth. Mother's Br. at 11-13. Although we could find waiver, in the interest of ensuring justice not only for Mother, but also for Child, we will address the issue on the merits.

*Id.* (citations omitted). To affirm, "we need only agree with [the trial court's] decision as to any one subsection" of 2511(a), as well as its decision as to Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b).

Section 2511(a)(2) provides:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Section 2511(a)(2) requires the moving party to produce clear and convincing evidence of three elements: (1) the parent's repeated and continued incapacity, abuse, neglect or refusal to discharge parental duties; "(2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

The trial court found that the case was opened in 2018 due to substance abuse and mental health issues, and objectives were established to accomplish reunification. The court determined, however, that despite some participation in parenting, anger management, and drug and alcohol counseling, Mother had not remedied her parental incapacities. N.T., 2/24/21, at 196. It pointed out that Mother was aggressive with caseworkers and during parent-child interaction therapy, and towards family members including maternal aunt and Child himself. *Id.* at 196. It also noted Mother testified positive for PCP several times and refused to attend random screens. *Id.* Furthermore, Mother's behavior during visits with Child was not always appropriate and sometimes hurt his feelings. *Id.* at 197. Mother did not successfully complete drug and alcohol or mental health treatment. *Id.*

We discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2). The record supports the trial court's findings and the court did not commit an error of law. Accordingly, we conclude that the termination of Mother's parental rights pursuant to Section 2511(a) was appropriate.

The evidence was also sufficient to establish that termination was in the best interests of the child. *See* 23 Pa.C.S.A. § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of

the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quotation marks and citations omitted).

Instantly, the trial court found:

[Child] is now four years old. He was placed in November of 2018 and he's currently placed with his maternal aunt. The testimony reflects that, while mom loves him, her relationship is more like an adult-child, as opposed to a parent-child relationship.

The parent-child bond is with is maternal aunt, and [Child] looks to her to met his needs, and she also wants to adopt him. The [c]ourt finds that [Child's] developmental physical and emotional needs are being met by his maternal aunt.

The testimony reflects that [Child] would suffer no irreparable harm if parental rights are terminated. [Child] needs permanency, and I find that it is in his best interest for parental rights to be terminated and for [Child] to be freed for adoption . . . .

N.T., 2/24/21, at 197-98.

The record supports the trial court's conclusion that Child's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). Mother's sufficiency challenges thus fail, and we affirm.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/8/2021*