J-S02043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2474 EDA 2024 |

Appeal from the Order Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001220-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2475 EDA 2024 |

Appeal from the Decree Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000072-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2476 EDA 2024 |

Appeal from the Order Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001221-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

:
:
:
APPEAL OF: K.R., FATHER              :
:
:
:
:
:      No. 2477 EDA 2024

Appeal from the Decree Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000070-2024

| IN THE INTEREST OF: K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2478 EDA 2024 |

Appeal from the Order Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001222-2021

| IN THE INTEREST OF: K.L.R., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | No. 2479 EDA 2024 |

Appeal from the Decree Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000071-2024

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 3, 2025**

K.R. ("Father") appeals from the decrees involuntarily terminating his parental rights to Mi.K.R., Me.K.R., and K.L.R., Jr. (collectively, "the Children") and the dependency orders changing the permanency placement goals for the Children to adoption. We affirm the decrees terminating Father's parental rights and dismiss the appeals from the dependency orders as moot.

The Philadelphia Department of Human Services ("DHS") filed petitions to change the permanency placement goals and terminate Father's parental rights on February 15, 2024. The court held a hearing on August 23, 2024. At the time of the hearing, Mi.K.R. was 12 years old, Me.K.R. was nine, and K.L.R. was six. The court thereafter granted the petitions and entered orders changing the Children's permanency goals and terminating Father's parental rights. Father appealed.

Father raises the following issues:

1. Whether the trial court committed reversible error, when it involuntarily terminated father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa. C.S.A. § 2511(a)(1), (2), (5) and (8).

2. Whether the trial court committed reversible error when it involuntarily terminated father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 Pa. C.S.A. § 2511(b).

3. Whether the trial court committed reversible error when it involuntarily terminated father's parental rights when father established he was ready, willing and able to parent his children[.]

Father's Br. at 8. DHS and the Child Advocate filed briefs supporting the termination. The guardian *ad litem* ("GAL") did not file a brief.

On review of the termination of parental rights, "[w]e accept the findings of fact and credibility determinations of the trial court if the record supports them." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). "Because trial courts are on the front lines assessing the credibility of witnesses and weighing competing and often challenging evidence, it is paramount that, in reviewing trial courts' decisions in this arena, appellate courts defer to trial courts' first-hand observations as they relate to factual determinations." **Int. of S.K.L.R.**, 256 A.3d 1108, 1129 (Pa. 2021). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **K.C.**, 199 A.3d at 473.

Termination of parental rights is governed by Section 2511 of the Adoption Act. **See** 23 Pa.C.S.A. § 2511. A termination petition entails a bifurcated analysis. **Int. of Z.N.B.**, 327 A.3d 241, 248 (Pa.Super. 2024). First, Section 2511(a) requires the petitioning party to prove by clear and convincing evidence that grounds for termination exist under at least one of the enumerated subsections. **Id.** Second, if the petitioner clears that hurdle, Section 2511(b) then requires the petitioner to prove by clear and convincing evidence that, considering the developmental, physical and emotional needs and welfare of the child, termination is in the child's best interests. **See id.**

This Court need only affirm grounds for termination under any subsection of 2511(a) before turning to the best interest analysis under

- 4 -

Section 2511(b). *Id.* at 248 n.7. Here, the court found grounds for termination under subsections (a)(1), (a)(2), (a)(5), and (a)(8). We will confine our review to Section 2511(a)(2), as we agree DHS met its burden under this subsection.

Father argues the court erred in ruling that grounds for termination existed under Section 2511(a)(2) because he substantially complied with his single case plan ("SCP") objectives. Father argues he is employed, maintains housing, and has completed a parenting class. Father's Br. at 14. He also participated in a behavioral health services ("BHS") evaluation and "maintained compliance with the children's therapist" but "was prohibited from completing" his own therapy program. *Id.* He further asserts that during his psychological evaluation he asserted that he did not require behavioral health services or drug and alcohol treatment. *Id.* Father contends that he has demonstrated an ability to care for the Children and emphasizes that he cares for other children in his home "on a daily basis." *Id.*

> Section 2511(a)(2) provides that termination is warranted when,
>
> [t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). Subsection (a)(2) requires the petitioning party to establish "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes

of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***Z.N.B.***, 327 A.3d at 249 (citation omitted).

This subsection focuses on the child's present and future need for essential parental care, particularly "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa.Super. 2010) (citation omitted) (emphasis removed). The parent need never have had custody of the child for subsection (a)(2) to apply. ***Id.*** at 1118. Rather, because "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties," ***In re D.L.B.***, 166 A.3d 322, 327-28 (Pa.Super. 2017), this subsection allows for termination when a parent has "failed to demonstrate a concrete desire or ability to remedy the problems that led to [the c]hild's placement," ***In re C.M.K.***, 203 A.3d 258, 262 (Pa.Super. 2019). A parent's failure to cooperate with agency services, participate in drug treatment, and complete mental health counseling are all relevant to this question. ***D.L.B.***, 166 A.3d at 328. Even a parent's seemingly "sincere efforts to perform parental duties" will not undermine the application of subsection (a)(2), particularly "after a long period of uncooperativeness." ***Z.P.***, 994 A.2d at 1117 (citations omitted).

Here, the court found that Father's "refusal to care for the children is . . . evidenced by his absence from the children's lives." Trial Court Opinion, filed Nov. 25, 2024, at 6. The court found that Father "has failed to perform parental duties for all of the children for the life of the case and, furthermore, for the lives of the children." ***Id.*** at 5-6. The court observed that the Children

have been in the custody of DHS since November 2021, after they were "essentially abandoned" and were placed in the care of their maternal aunts in January 2022. *Id.* at 2, 6. Since that time, Father has "failed to complete his SCP's and flouted court orders mandating supervised visitation with the children." *Id.* at 6.

The court noted that Father's SCP objectives were "(1) attend domestic violence classes; (2) attend anger management classes; (3) engage in supervised visitation with the children; (4) attend a BHS evaluation and treatment if deemed necessary by the evaluation; (5) attend random drug screens; and (6) complete parenting, housing, and financial literacy classes[.]" *Id.* at 2. The court observed that Father completed a BHS evaluation but had not engaged in the treatment recommended by the evaluation. *Id.* Father also completed a single parenting class at the ARC. *Id.* The court found Father "denies the need for any kind of treatment or class to alleviate the issues which initially brought the case in – neglecting his parental duties." *Id.* at 3. The court also observed that Father testified that he knowingly violated the court's custody order by visiting with the Children without supervision. *Id.*

Our review of the record shows it supports the trial court's findings. The testimony at the hearing established that the Children were adjudicated dependent in November 2021, after the death of their mother. *See* N.T., 8/23/24, at 22. Father was not caring for the Children at that time, nor had he been caring for them for most of their lives, and they were "essentially

abandoned." *Id.* In January 2022, two of the Children were placed in kinship care with a maternal aunt, and the other child was placed in kinship care with another maternal aunt. *Id.* at 36, 38, 41.

Following the dependency adjudication, the community umbrella agency ("CUA") developed the above-listed SCP objectives to demonstrate Father's ability to provide a safe and stable home for the children. *Id.* at 25. The CUA case manager testified that some of the objectives arose because he was concerned about indications of domestic violence and Father's tendency to become combative. *Id.* at 25-27.

While Father completed the BHS assessment, he ignored the resulting referrals for mental health and drug and alcohol services. *Id.* at 29-31, 46-47. He did not complete a domestic violence assessment or attend domestic violence classes or anger management classes. *Id.* at 25-26. Father told the CUA case manager that he did not need the recommended classes and counseling. *Id.* at 46-47, 55. Father testified and conceded that he had not complied with the court's orders for treatment and counseling because he "felt like [he] shouldn't be in this predicament." *Id.* at 85; *see also* 91-94.

The CUA case manager also testified that Father failed to maintain consistent contact with the CUA – his phone number was often changed or disconnected, and mailed correspondence would be returned as undeliverable. *Id.* at 23-25. The CUA case manager stated that Father had not provided any recent paystubs to verify his employment status, and that he did not know Father's current address. *Id.* at 32-33.

The court ordered Father's visits with the Children be supervised because the CUA caseworker had never seen the Children interact with Father. *Id.* at 27. Visitation was to be at the Children's discretion. *Id.* at 28. The Children opted against visitation with Father until "recently," after Father began visiting with the Children unsupervised. *Id.* at 28-29, 49. The Children's aunts had been taking them to see Father. *Id.* at 49-51. Father never engaged in any supervised visits with the Children. *Id.* at 29. Father conceded he violated the order requiring visits to be supervised. *Id.* at 83-84.

The CUA case manager opined he did not believe the Children could be safely reunited with Father, at least as of the date of the hearing. The case reasoned that Father failed to comply with the SCP objectives, violated the visitation rules, and has never cared for the Children long-term. *Id.* at 32, 34.

Given the foregoing, the trial court's subsection (a)(2) determination was not an abuse of discretion. Father's failure to provide essential parental care for the Children resulted in their placement, and for over two years, he has largely refused to comply with the objectives imposed to ensure his capacity to assume their care.

Father next argues the court erred in finding termination would best suit the Children's needs and welfare under Section 2511(b). Father argues he shares a bond with Children. Father's Br. at 16. He also argues the fact that the maternal aunts permitted him unsupervised overnight visitation with the Children proves their confidence that Father would be the appropriate permanent caregiver. *Id.* at 16-17.

Section 2511(b) states in relevant part, "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). This requires the court to place the child's "needs and welfare above concerns for the parent." *Int. of C.S.*, 327 A.3d 222, 239 (Pa.Super. 2024) (citation omitted). The court must consider "the nature and status of the parent-child bond," any detrimental effect on the child of permanently severing that bond, "whether the child is in a pre-adoptive home and bonded with foster parents[,] and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* at 239-40 (citation omitted).

Here, the court found "testimony from the family's CUA case worker is that there is no parental bond between [Father] and the [C]hildren, and that to remove the [C]hildren from their current placements and placing them back with [Father] would have a 'big, negative impact' on the [C]hildren due to the bond they share with their caregivers." Trial Ct. Op. at 8. The court found reunification with Father would not be in the Children's best interests. *Id.*

The record supports this determination. The CUA case manager testified that the Children "love their Father" but "didn't want to live with him." N.T. at 55, 57. He testified that the Children do not look to Father to fill their needs and would not suffer irreparable harm if Father's parental rights were terminated. *Id.* at 35.

In contrast, the CUA caseworker stated that the foster parents provide for the Children's daily needs, and the Children look to them for comfort and guidance, or for care when they are sick, hungry, or hurt. *Id.* at 37-42. Each child shares a strong bond with their foster parent. *See generally id.* at 38-41; *see id.* at 37 (CUA caseworker stating oldest child's placement is "the only constant she's had in her life since she lost her mother"). He testified that removal from their pre-adoptive homes would have a significant negative impact on the Children, and it was in the Children's best interests to be freed for adoption. *Id.* at 37, 38, 40, 41, 42, 45. The Children also told the CUA caseworker that they wished to be adopted by their aunts. *Id.* at 55, 57.

The middle child testified, stating that he wished to continue having visits with Father, but to remain in his aunt's home. *Id.* at 70. The court interviewed the oldest child *in camera* and reported on the record that she told the court she wished to remain with her aunt. *Id.* at 78-79.

The Child Advocate confirmed that all three Children wished to be adopted by their caregivers. *Id.* at 58. The GAL stated that she believed it to be in the Children's best interests to remain with their caregivers. *Id.* at 99.

The court did not abuse its discretion in determining that termination of parental rights was in the Children's best interests. Father has had limited contact with Children throughout their lives, whereas the Children have been living in their pre-adoptive homes since January 2022 and share close bonds with their caregivers.

In his final issue, Father argues the court abused its discretion in terminating his parental rights because "he was ready, willing and able to parent" his children. Father's Br. at 17 (citing *In the Interest Anika H.*. 505 A.2d 1014, 1015 (Pa.Super. 1986)).

This issue lacks merit. The case Father cites is not relevant to the issue before us. It discusses the standard for determining whether children should be adjudicated dependent. *See Anika H.*, 505 A.2d at 1015. In the instant case, the Children were adjudicated dependent in November 2021, and that determination is not the subject of this appeal. Furthermore, Father's refusal to comply with the SCP objectives refutes his claim that he was ready, willing, and able to parent the Children at the time of the termination hearing.

Because we affirm the termination of parental rights, the appeals from goal change orders are moot.[1] *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa.Super. 2021).

Decrees affirmed. Appeals of goal-change orders dismissed as moot. President Judge Lazarus joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

_____

[1] Father also fails to advance any argument against the goal change orders.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2025