J-A28022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.C., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J., MOTHER | : : : : : : : | |
| | : | No. 904 MDA 2025 |

Appeal from the Decree Entered June 6, 2025
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2024-01273

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JANUARY 23, 2026**

A.J. ("Mother") appeals from the decree involuntarily terminating her parental rights as to her daughter, A.M.C. ("Child"). Mother argues the court erred or abused its discretion in terminating her parental rights without examining the bond between her and Child or considering Child's desire to maintain their relationship. She also contends that termination is not in Child's best interest now that her foster parents have been designated her permanent legal custodians. We affirm.

Child was born in September 2011. She was removed from Mother's care in April 2022, when she was 10 years old, and placed in the custody of Lancaster County Children and Youth Services Agency ("CYS"). The juvenile court adjudicated Child dependent "due to concerns relating to Mother's mental health, drug and alcohol misuse, and criminal history." Trial Court

Opinion, August 5, 2025, at 5. The court gave CYS custody of Child, and CYS placed Child in kinship care with foster parents ("Foster Parents").

Mother's case plan for reunification with Child had the following objectives:

[T]o improve mental health functioning to the extent that [Mother] can care for [Child], to remain free from illegal drugs and misuse of alcohol and prescribed medications, to remain crime-free, to learn and use effective parenting skills, to demonstrate adequate income to meet her needs and the needs of [Child], to obtain and maintain safe, stable housing, and to maintain an ongoing commitment to the Child.

*Id.* at 6.

The juvenile court also ordered Mother to undergo a psychological evaluation and comply with any recommendations. The resulting report contained the following recommendations, which the juvenile court approved after a hearing:

[C]ontinued participation with [CYS], participating in a partial hospitalization program, consulting with a psychiatrist, completing a neurological and neuropsychological evaluation to determine the extent of any organic brain injury or concerns related to substantial substance misuse, and . . . participating in a parenting class and support group.

*Id.* at 7-8. Mother was thereafter diagnosed with "post-traumatic stress disorder, schizophrenia, cannabis use disorder, opioid use disorder (severe, in remission), and cocaine use disorder (severe, in remission)." *Id.* at 8.

At the permanency review hearings that took place between Child's removal and April 2024, the juvenile court found Mother had made minimal to no progress toward alleviating the circumstances that led to Child's placement

and was moderately to minimally compliant with her case plan objectives. *Id.* at 2-3. It found Mother had been discharged from the parenting course in February 2023 due to numerous absences, and that when she attended, she "could not stay on topic as a result of her mental health issues." *Id.* at 8-9. Mother refused to participate in drug screenings. She also "discuss[ed] inappropriate topics with [Child], including that [M]other believed that she had been hypnotized and that she had contracted herpes." *Id.* at 10. Mother also incurred new criminal charges, including defiant trespass and resisting arrest. Mother remained unhoused and did not seek housing.

At a December 2023 hearing, when Child was 12 years old, Child testified that she wished to be adopted. Between this hearing and the ensuing April 2024 hearing, Mother was scheduled to have biweekly visitation with Child but missed most of those visits. At the April 2024 hearing, Child again testified that she wished to be adopted.

The following month, in May 2024, CYS filed a petition for the involuntary termination of Mother's parental rights. The orphans' court held a hearing three months later, in August 2024.

A CYS caseworker, Jennifer Bechtel, testified that throughout the case, Mother had refused to engage with mental health services or take medication. *Id.* at 14. Mother had not made progress with treating her substance abuse and had refused drug screens for the preceding two years. *Id.* at 15. Additionally, Mother failed to comply with her goal of remaining crime-free. She had been charged with resisting arrest, possession of marijuana,

possession of drug paraphernalia, public drunkenness, defiant trespass, and disorderly conduct. *Id.* Mother was incarcerated in March 2024 after being convicted of retail theft and related charges.

Bechtel further testified that Mother had failed to comply with her goals of learning effective parenting techniques and completing a parental education course. *Id.* at 16. Mother also failed to satisfy the goal of maintaining a commitment to Child, by missing numerous visits and discussing inappropriate topics with Child. *Id.* at 16-17. Bechtel testified that between January and August 2024, Mother only had five visits with Child. *Id.* at 16. She also had not made sufficient progress in securing stable housing, remaining unhoused throughout the case and having no plans to secure housing. *Id.*

Bechtel testified that meanwhile, Child "is thriving in her kinship placement." *Id.* at 17. She stated Child has a bond with her resource parents and wishes to be adopted. *Id.* at 18; *see also* N.T., 8/27/24, at 14 (Bechtel agreeing that Child has "developed that bond with her . . . resource parents that she does not have with her mother"). She also stated Child has expressed she would like to maintain some form of a relationship with Mother. Trial Ct. Op. at 18.

Mother testified that "the only mental health care she was receiving was through writing her own book about mental health." *Id.* at 14. Mother was confused about the purpose of the hearing, believing it was related to her

- 4 -

allegations of sexual assault. Child's guardian *ad litem* supported CYS's petition for termination.[1]

In June 2025, the court entered a decree terminating Mother's parental rights as to Child.[2] It found CYS had presented clear and convincing evidence that termination of Mother's parental rights was warranted under Section 2511(a)(1), (a)(2), (a)(5), (a)(8), and Section 2511(b).

Mother appealed. She raises two issues:

[1.] Did the Trial Court err or abuse its discretion in terminating Mother's parental rights when granting her foster parents permanent legal guardian status provides the child with permanence without impairing the child's stated desire to maintain a relationship with her Mother?

[2.] Did the Trial Court err or abuse its discretion by terminating Mother's parental rights without closely examining the bond between the thirteen year old child and Mother as required under Section 2511(b), given that the child has expressed a desire to continue to have a relationship with her mother?

Mother's Br. at 8 (suggested answers omitted). Neither CYS nor Child's guardian *ad litem* has filed a brief.

Mother's two issues are interrelated. In her first issue, Mother asserts that after the orphans' court terminated Mother's parental rights, CYS "changed the primary goal in this case to appointment of a permanent legal

---

[1] The court found no conflict between Child's best interest and her preference. It therefore did not appoint separate legal counsel. **See** Trial Ct. Op. at 27 n.3.

[2] According to the court, the delay in deciding the petition occurred because the court obtained and reviewed the record of the dependency case from juvenile court. Trial Ct. Op. at 5.

guardian rather than adoption[.]" *Id.* at 10. Mother claims the juvenile court has discharged CYS's custody of Child and entered an order "giving legal and physical custody of [Child]" to Foster Parents. *Id.* at 9. Mother argues this has obviated any need to terminate Mother's parental rights.

Mother concedes that "there have been periods of time when [she] has not had frequent, consistent contact with" Child, and that her mental health condition is "beyond her control" and has prevented her "from accomplishing the goals in her Child Permanency Plan[.]" *Id.* at 13. However, Mother argues Child has requested to maintain a relationship with Mother, and that continuing their relationship would benefit Child. Mother claims the court's appointment of Foster Parents as Child's permanent legal custodians has "provide[d] [Child] with the permanent placement she requested and no termination of Mother's rights was needed to accomplish that goal." *Id.* at 11. Mother states she "believes that no adoption is anticipated and that [Child] prefers it that way." *Id.*

In her second issue, Mother argues the court abused its analysis under Section 2511(b) in finding that termination best serves Child's needs and welfare. Mother asserts that the court failed to fully examine whether termination of her parental rights would have an impact on Child. She also claims the court's conclusion that termination is in Child's best interest "is not supported by any evidence." *Id.* at 15. Mother contends that the court's failure to fully explore the Child's emotional needs warrants reversal. *Id.* at 17 (citing

*In the interest of: A.M.-G.*, No. 1257 EDA 2022, 2022 WL 17588910 (Pa.Super. filed Dec. 13, 2022) (unpublished mem.)).

Mother further asserts that termination is not in Child's best interest because Mother's "mental health condition has not prevented [Child] from having a safe, stable life with the family chosen by Mother," and that "[t]here is no reason to believe that Mother will attempt to remove [Child] from the custody of the foster parents." *Id.* at 11. Mother asserts that although Child may have stated she wanted to be adopted, Mother's counsel was not present when the court interviewed Child. Mother maintains that because there is no transcript of the interview, it is unclear whether Child understood she could remain with Foster Parents permanently without an adoption taking place. In addition, Child expressed that she wished to continue her relationship with Mother. Mother claims the court has already provided the needed stability and permanency for Child by granting permanent legal and physical custody to Foster Parents.

We are guided by the following standard of review.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* at 728-729 (internal quotation marks and citation omitted). We accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. *Id.*

***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018).

Section 2511 of the Adoption Act governs the termination of parental rights, and requires a bifurcated analysis. ***See In re T.L.H.***, 336 A.3d 1069, 1079 (Pa.Super. 2025). First, the court must focus on the conduct of the parent and determine if grounds for termination exist under any subsection of Section 2511(a). ***Id.*** If so, the court must turn to Section 2511(b), and determine if termination best serves the child's needs and welfare. ***Id.***

Here, the court found termination warranted under subsection (a)(1), (a)(2), (a)(5), and (a)(8).[3] Mother does not dispute that Section 2511(a) has been satisfied, or assert that she will ever be able to resume care of Child.

_____

[3] These sections provide for termination when:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. . . .

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of

*(Footnote Continued Next Page)*

We therefore turn to Mother's argument that the court failed in its subsection (b) analysis. Section 2511(b) requires the party seeking termination to prove "that termination would best serve the child's needs and welfare[.]" *Int. of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023). The court must place the child's "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* This includes an examination into "intangibles such as love, comfort, security, and stability." *Id.* at 1106. In particular, the court should consider "whether the [child] is in a pre-adoptive home and whether they have bonded with their [pre-adoptive] parents"; the child's bond with their biological parent; and "whether the trauma caused by breaking [the parent-child] bond is outweighed by the benefit of moving the child toward a permanent home." *Id.* at 1106-07 (citations omitted). The trial court has "discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id*. at 1113.

Regarding Child's best interest, the court opined as follows.

---

time and termination of the parental rights would best serve the needs and welfare of the child. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8).

> The Child testified at several different permanency review hearings that she wishes to be adopted. At the termination of parental rights hearing, credible testimony purported that the Child continued to wish to be adopted by her resource parents. The Child would like to maintain some relationship with her Mother, but expressed frustration with her Mother's lack of progress and with Mother's inconsistency with visitation. The Child has a beneficial bond with her resource parents and is thriving in their home. While the Child maintains some bond with Mother, the Child's bond with her resource parents is strong and she wishes for them to adopt her. It is clear to the court that this is in her best interest as it recognizes the bond she formed living with her resource family for at least two and a half years.

Trial Ct. Op. at 26. The court also noted the Child's guardian *ad litem*, in advancing Child's best interest, agreed with termination. *Id.* at 27.

The court properly considered Child's bond with Mother, and Child's desire to maintain that bond, when determining that termination is in Child's best interest. The court noted Mother's bond with Child, but determined that this was outweighed by Child's stronger bond with Foster Parents and Child's need for stability. *See id.* at 24 (trial court stating, "The Child cannot wait indefinitely for Mother to have the ability to raise her in a safe and stable setting"). As stated above, a child's bond with the biological parent is just one factor for the court to consider. *See Int. of K.T.*, 296 A.3d at 1106-07. "[T]he mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Here, adoption will not necessarily deprive Child of all opportunities to see Mother. Before any adoption occurs, the parties will be notified of the option to enter into a voluntary post-adoption contact agreement. *See* 23 Pa.C.S.A. § 2733(c). Even in the absence of a formal

agreement, Mother may informally visit Child at Foster Parents' discretion, as may any other relative.

We next address Mother's argument that the appointment of Foster Parents as Child's permanent legal custodians requires reversal of the termination of her parental rights. Notably, the record of the juvenile court proceedings are not in the certified record, although they were moved into evidence at the termination hearing and incorporated into the record by a court order. **See** N.T. at 26, 39; Order, filed 9/5/24.[4] We are therefore unable to confirm whether the juvenile court designated Foster Parents as Child's permanent legal custodians.

Even if it did, this argument lacks merit. Mother claims that the designation of permanent legal custodians for Child affords Child sufficient stability and permanency. There are many reasons why a juvenile court might grant a permanent legal custodian. Its doing so here does not affect whether Mother's rights should have been terminated. A permanent legal custodian is permanent only in the sense that no further dependency proceedings are contemplated. **See** 42 Pa.C.S.A. § 6351(a)(2.1). The subsequent appointment of Foster Parents as Child's permanent legal custodians does not automatically warrant reversal of the termination of Mother's parental rights. We find no error or abuse of discretion.

---

[4] Mother has not challenged the court's characterization of the contents of the juvenile court documents. Their absence has therefore not hindered our preceding analysis.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/23/2026