J-A09027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1303 WDA 2025 |

Appeal from the Order Entered September 12, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000007-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: L.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1427 WDA 2025 |

Appeal from the Order Entered September 12, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000008-2025

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: JUNE 2, 2026**

L.W. ("Father") appeals from the order terminating his parental rights to his two minor children, L.W. and L.T. (collectively, "Children"). Father argues the court abused its discretion by concluding that termination best suits Children's needs and welfare because the psychologist testified about concerns with Children's foster home and failed to assess Father's bond with Children. We affirm.

L.W. was born in 2020, and L.T. was born in 2022. They were adjudicated dependent in March 2023. In June 2023, their mother died. They were found at home alone with their deceased mother. N.T., 9/5/25, at 40. Children were placed in the care of Foster Mother, who is their maternal cousin. Foster Mother's two adult children and one teenage child also reside with her. In January 2025, Allegheny County Office of Children, Youth, and Families ("CYF") filed a petition to terminate Father's parental rights.

The court held a hearing on September 5, 2025, when Children were five years old and two years old and had been with Foster Mother for over two years. CYF presented the testimony of Michele Haney, CYF Casework Supervisor; Turquoise Vaughn, CYF Permanency Caseworker; Brie Zarotney, Assistant Director of Transportation at A Second Chance; and Dr. Eric Bernstein, a licensed psychologist, who was admitted as an expert in the field of forensic psychology.

The testimony established that Father was not providing primary care for Children prior to their placement with Foster Mother. N.T., 9/5/25, at 40-42, 49. Father's goals for reunification were the following: "[t]o obtain a drug and alcohol evaluation and follow all recommendations, to participate in parenting [classes], to participate in an [Intimate Partner Violence] assessment, and follow their procedure for batterers' intervention, to visit with [Children] on a regular basis, and to attend any medical or other appointments." *Id.* at 42. Father was also ordered to submit to random urine screens. *Id.* at 49. During the life of the case, Father maintained inconsistent

contact with CYF and did not address any of his court-ordered goals. *Id.* at 42, 49-50, 56-57, 60, 67-68, 71.

Since Children's placement, Father has had two virtual visits with L.W. and attended one in-person visit out of 11 scheduled visits with L.W. *Id.* at 11-13, 43, 51-52, 67. The single in-person visit took place after the termination petition was filed. At the visit, there were "[n]o safety concerns, but the interaction was fairly – there wasn't a lot of comfort." *Id.* at 51. He was ordered to complete paternity testing before visiting L.T., but failed to do so. *Id.* at 43-44. As a result, Father has had no visits with L.T. *Id.* at 11, 43. Father has not sent Children any cards, letters, gifts, or support. *Id.* at 45.

Children are visited by a CYF representative at Foster Mother's home monthly. *Id.* at 46-47. Children receive services for grief and loss due to Mother's death. *Id.* at 48. L.W. also attends speech therapy. *Id.* It is CYF's opinion that Children have bonded with Foster Mother and are happy. *Id.* at 48, 64, 68-69. Foster Mother is meeting Children's educational, psychological, and developmental needs. *Id.* at 48-49, 68. Foster Mother has been entrusted as Children's medical and educational decision maker since October 2023. *Id.* at 60-61. After Dr. Bernstein completed his report, discussed below, CYF investigated Foster Mother's care of Children. Foster Mother provided CYF with documentation that she has a medical marijuana card, and CYF determined there are no areas of concern regarding Foster Mother's ability to care for Children. *Id.* at 47-48, 61, 68, 72.

Dr. Bernstein testified that he evaluated Children and Foster Mother and issued two reports, in August 2024 and May 2025. ***Id.*** at 17. Dr. Bernstein testified that Children appeared comfortable with Foster Mother and sought her attention during the evaluation. ***Id.*** at 20. He said that Foster Mother provided Children with attention, oversaw their safety and well-being, and encouraged them with stimulation and support. ***Id.*** at 21-22. Dr. Bernstein also observed moments of spontaneous affection between Children and Foster Mother. ***Id.*** at 24. He testified that Children have a bond with Foster Mother, and that he considered her their "psychological parent" due to Foster Mother's investment in Children, the titles Children use for her, their reliance on her for their daily needs, and Foster Mother's responsibilities in caring for Children. ***Id.*** at 21, 24.

Dr. Bernstein testified that he had some concerns regarding Children's placement with Foster Mother. ***Id.*** at 22. These included potential physical discipline, marijuana use by Foster Mother and her adult son, the adult children not wanting intrusion by the agency, and Foster Mother's initial disinclination to be considered as a permanency resource. ***Id.*** at 22-23. However, Dr. Bernstein supported Foster Mother as a permanency resource for Children. ***Id.*** at 21, 24-25. He stated that Foster Mother's possession of a medical marijuana card would "alleviate a certain measure of concern[.]" ***Id.*** at 23. He testified that he endorsed Foster Mother with "a condition that no physical discipline is to be used and for [CYF] to investigate as they determine appropriate[.]" ***Id.*** at 25.

Dr. Bernstein attempted to evaluate Father, but Father failed to attend the appointments. *Id.* at 18. Dr. Bernstein opined that assuming L.T. was less than one year old when removed from Father's care, "he would have no memory nor awareness of his father unless otherwise there had been subsequent contact," and that if no further contact had taken place, "then you could certainly argue that there had been no bond developed from that point in time until now." *Id.* at 26; *see also id.* at 26-27. He also explained that it would have been difficult for any earlier bond between Father and L.W. to have been maintained by a few short visits. He explained that a "bond requires ongoing interactions and contact with consistency and stability such that the child has psychologically understood that individual as a meaningful part of them or their lives." *Id.* at 30; *see also id.* at 21.

Father did not appear for the hearing. The court telephoned him from the bench; Father stated he was waiting for a ride to the courthouse. *Id.* at 8-10. When Father's counsel called him again, Father did not answer, and counsel left him a voicemail. *Id.* at 36. Counsel missed a call from Father during the testimony, but when she returned his call, she was again sent to Father's voicemail. *Id.* at 76. Following closing arguments, the court called Father again and left a voicemail stating the court would decide the case at 1:00 p.m. *Id.* at 81-82. Father failed to call or appear, and the court concluded that he "had ample time to get here and has chosen not to attend." *Id.* at 83.

The court found grounds for termination under Section 2511(a)(1) of the Adoption Act. *See id.* at 84-89. This subsection provides grounds for

termination when "The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

It also found termination best suits Children's needs and welfare under Section 2511(b). *See id.* at 89-94. The court observed Children's young ages and their need for permanency. *Id.* at 89. It noted they have been in Foster Mother's care for over two years, with "virtually no involvement from [Father]." *Id.* The court also noted the testimony substantiating a bond between Children and Foster Mother. *Id.* at 90-92. The court found that Foster Mother "very clearly is the person who has been meeting all of their day-to-day needs[.]" *Id.* at 92.

The court inferred that even before Children were placed with Foster Mother, Father "really was not very involved during that time because CYF would have had more contact with him if he had been involved." *Id.* at 90. It also reviewed Dr. Bernstein's testimony that, even if L.T. had some bond with Father before placement, he would have had no memory of that, and without any additional contact, the court found it "very reasonable . . . to conclude that no bond exists." *Id.* at 92. The court also found no bond between L.W. and Father. It noted that Father had not taken steps to ensure "ongoing contact, ongoing connection, an experience for the child of that parent responding to their needs, [and] being reliably present[.]" *Id.* at 93. The court also determined that even if L.W. had retained some bond with Father, this

would not outweigh L.W.'s "need for permanency, stability, and a positive adult who is meeting their needs[.]" *Id.* at 94.

The court terminated Father's parental rights. Father appealed.[1] He raises the following issues:

> 1. Whether the trial court abused its discretion and/or erred as a matter of law in finding that clear and convincing evidence supported termination of [Father]'s parental rights under 23 Pa.C.S. § 2511(b) when the court-appointed psychologist raised serious concerns about the appropriateness of the current foster placement?
>
> 2. Whether the trial court abused its discretion and/or erred as a matter of law in finding that clear and convincing evidence supported termination of [Father]'s parental rights under 23 Pa.C.S. § 2511(b) when no bonding assessment was performed between [Father] and the children?
>
> 3. Whether the trial court abused its discretion and/or erred as a matter of law in finding that clear and convincing evidence supported termination of [Father]'s parental rights under 23 Pa.C.S. § 2511(b) when the totality of the record does not support such a conclusion?

Father's Br. at 8. Children, through counsel,[2] and CYF have filed briefs in support of termination.

Father first argues the court erred or abused its discretion in finding that termination was in Children's best interests because Dr. Bernstein "raised significant concerns about the foster placement that directly contradict any finding that termination serves L.W. and L.T.'s needs and welfare." *Id.* at 14.

---

[1] Father appealed at each docket. We consolidated the appeals *sua sponte*.

[2] The court determined that there was no conflict between Children's legal interests and best interests.

Father points out that Dr. Bernstein testified to concerns about physical discipline of the children in the foster home, and to concerns regarding marijuana use by Foster Mother and her adult son. *Id.* He also states Dr. Bernstein testified that Foster Mother "initially expressed resistance to adopting [Children] because her older children did not want agency involvement or intrusion in their lives." *Id.* at 15. Dr. Bernstein testified that he could only recommend adoption by Foster Mother on the condition that she not use physical discipline and that CYF "investigate as they determine appropriate." *Id.* at 15-16 (quoting N.T.). Father asserts that the expert's equivocation undermines a finding that the evidence supporting termination was "so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance." *Id.* at 16 (quoting *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994)).

Father next argues the court erred or abused its discretion in finding termination is in Children's best interests without a bonding assessment between Father and Children. Relying on *In re E.M*., 620 A.2d 481 (Pa. 1993), Father asserts that because CYF's own expert recommended a psychological assessment of Children's bond with Father, the absence of the assessment renders the evidence insufficient to meet the clear and convincing standard. Father argues that here, there is no evidence relating to the existence or absence of a parent-child bond, as is required by a best interest analysis.

Finally, Father argues termination in this case was not supported by "a complete evidentiary record that accounts for [Children's] developmental

needs and emotional consequences of severance." *Id.* at 21. He argues the "evidentiary gaps are particularly troubling given [C]hildren's ages and vulnerability." *Id.* He asserts that L.W. "is old enough to have formed memories and attachments," and that "L.T. is in critical early developmental stages where attachment and stability are paramount." *Id.* Father argues that Children "have already experienced significant disruption and trauma" and that severance of their relationship with Father would add to that trauma. *Id.*

Our standard of review is as follows.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination by clear and convincing evidence. Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We accept the findings of fact and credibility determinations of the trial court if the record supports them. If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion.

*In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018) (quotation marks and citations omitted).

Termination of rights is controlled by Section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. Section 2511 entails a two-step analysis. First, Section 2511(a) requires the court to find grounds for termination based on parental conduct. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Father does not contest that grounds for termination exist in this case pursuant to Section 2511(a)(1).

Second, Section 2511(b) requires the court to determine "the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citing 23 Pa.C.S.A. § 2511(b)).[3] A child's "emotional needs and welfare include intangibles such as love, comfort, security, and stability." ***Int. of K.T.***, 296 A.3d 1085, 1106 (Pa. 2023) (quotation marks and citation omitted). The court must consider whether the child and parent share an emotional bond which is beneficial to the child and the effect on the child of severing that bond. ***See In re Adoption of G.W.***, 342 A.3d 68, 90 (Pa.Super. 2025) (*en banc*). The court must also consider "the child's need for permanency and length of time in foster care" and whether the child has bonded with their foster parents, whether the foster home is a pre-adoptive home, and whether the foster home meets child's needs and welfare. ***Id.*** (quoting ***Int. of K.T.***, 296 A.3d at 1113). The court has the discretion to weigh each contributing factor during a best interest analysis. ***Id.*** at 91.

---

[3] Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Father's issues have no merit. First, while Dr. Bernstein testified he had reservations regarding Foster Mother's marijuana use, he testified that this concern would be alleviated by Foster Mother's possession of a medical marijuana card. CYF presented testimony that Foster Mother had a medical marijuana card. And, although Dr. Bernstein testified that he endorsed Foster Mother as a permanency resource on the condition that she not use corporal punishment, and with the approval of CYF, CYF presented testimony that it thereafter investigated Foster Mother and had no lingering concerns. In combination, the testimony was "so clear, direct, weighty and convincing" as to enable the trial court to determine, without hesitation, that Foster Mother meets Children's physical, developmental, and emotional needs and welfare. *K.C.*, 199 A.3d at 473.

Next, Father's claims that the record is incomplete are unsubstantiated. The court is not required to order a formal bonding evaluation be performed by an expert before assessing a parent-child bond. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super. 2008); *accord In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). Moreover, Father will not be heard to argue that an expert psychological assessment would have proven he shares an emotional bond with Children, when Father failed to attend the assessment.

CYF carried its burden to present clear and convincing evidence that termination of Father's parental rights is in Children's best interests. It presented testimony indicating that Father had never been Children's primary caretaker and establishing that Children were placed in foster care when they

were approximately three years old and less than one year old and that Father has barely seen them in the past two years. Dr. Bernstein opined that a parent-child bond would be unlikely in this scenario. Meanwhile, Children have been living with Foster Mother for two years and consider her to be their psychological parent.

The facts in this case stand in stark contrast to those of *In re E.M.* There, the agency's expert psychologist assessed the emotional bond between the children and the foster mother but did not assess the children's interactions with the foster father or with their biological mother, despite testifying that they would be important pieces of a best interest analysis. *In re E.M.*, 620 A.2d at 484. She also testified that the children still shared an emotional bond with their biological parents, and had expressed a desire to live with both their foster parents and their biological parents. *See id.* Here, no evidence supports the notion that Children have any emotional bond with Father, and no agency expert or worker offered such testimony.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/2/2026

- 12 -